Aaron Clyde **HARRIS**, Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, Defendant.

**Civ. A. No. 864.**

United States District Court
N. D. Florida,
Pensacola Division.

Dec. 18, 1957.

R. H. Merritt, Pensacola, Fla., for plaintiff.

A. Frank O'Kelley, H. O. Pemberton, Keen, O'Kelley & Spitz, Tallahassee, Fla., for defendant.

DE VANE, Chief Judge.

The facts in this case, except in minor respects, are not in conflict. The parties agree that on August 9, 1953, plaintiff purchased from defendant Policy No. 328 450–B08–10 for coverages for bodily injury liability, property damage liability and medical payments designated in the policy as Coverages A, B, C Semi-annual or annual premiums on this policy were thereafter paid by plaintiff, which carried it beyond July 3, 1956; in fact, the expiration date of said policy was February 8, 1957, according to the last premium payment receipt issued thereon.

On July 3, 1956, plaintiff was involved in an automobile accident with one Robert S. Starnes and was sued by Starnes for injuries received in this accident. Defendant was properly notified of the accident and of the suit, investigated the same and thereafter declined to defend the suit, claiming that the policy upon which plaintiff seeks recovery had been superseded by another policy and the second policy had been canceled prior to the accident. Starnes recovered judgment against plaintiff totalling $17,-303.25, no part of which defendant has offered to pay.

This suit by plaintiff is to recover from defendant damages for defendant's refusal to defend the suit, for attorney's fees expended by plaintiff in the defense thereof, for attorney's fees in this case and for the face amount of the policy to be applied in satisfaction of the Starnes judgment. The only question before the Court, therefore, is whether defendant successfully and effectively canceled the insurance held by plaintiff with the defendant company.

The facts surrounding this controversy are briefly stated below:

Plaintiff for years had been a Civil Service employee of the Federal Government, working in some civilian branch of the Armed Services. In late 1955 he resigned from his position in Florida and went to Seattle, Washington, to take a like position there. His wife accompanied him as far as California, where she stopped to visit her sister. Plaintiff left his automobile with his wife and went on to Seattle, Washington. He soon found that the position he had accepted out West was unsatisfactory and he returned to Florida and secured another position with the Federal Government with some branch of the Armed Services at Panama City. His wife remained in California, retaining his automobile.

Either on his trip West or while his wife was operating the automobile in

California, it was involved in a minor accident and the wife went to the local office of defendant in the town where her sister lived and applied for additional liability coverage, designated as G and H. At the time she made application for this additional coverage she paid the insurance company therefor and took the insurance company's receipt evidencing the payment.

For some reason not satisfactorily explained in the evidence by the insurance company, the Florida office of the insurance company transferred its policy issued to plaintiff and its file pertaining thereto to the California office, and the California office, without authority from plaintiff or notice to him, issued a new policy, which included coverages A, B, G and H, and attempted to substitute this policy for the one the Pensacola office had issued to plaintiff.

Plaintiff was fully aware of the fact that his wife had applied for additional coverage at a California office of defendant and he had advanced to her the necessary money to pay for the additional coverage, and plaintiff testifies that when he received the policy from the California office of the company, he just assumed that it was for the additional coverage and paid no attention to and made no examination of the policy.

Subsequent to the issuance of this new policy by defendant's California office, that office made an investigation into the automobile accident of plaintiff in California and as a result thereof, concluded to cancel out the policy it had issued to plaintiff on the application of his wife for the additional coverage, and under date of May 22, 1956, mailed to plaintiff and his wife a cancellation notice addressed to them at 8674 East 5th Street, Ontario, California. This was the address that plaintiff's wife gave the insurance company at the time she made application for the additional coverage and she testified that she notified the company that that was the address of her sister and that she would be there for only approximately one week. The cancellation notice carried with it a few dollars refund from the insurance company. Plaintiff testified that thinking the cancellation applied only to the additional coverage and the refund, being in an amount less than paid by him for the additional coverage, was intended only as a refund on such coverage. The cancellation letter is unsigned, but it does show that it was addressed to Harris at an improper address, that it gave notice of the cancellation date of the policy, a description of his automobile and the policy number of the new policy sent to him after the additional coverage had been included therein.

None of the foregoing facts in the case are in dispute. The dispute between the parties arises as to what transpired in defendant's office on February 4, 1956, when plaintiff, responding to a notice to him from defendant mailed to him from its Jacksonville office, paid the insurance due upon his old policy. Plaintiff's testimony is to the effect that he went to the office of the defendant with the notice, tendered the money and an employee of defendant accepted it and issued him a receipt therefor. He testified that nothing was said to him at that time with reference to the California policy, or with reference to any premium that might fall due thereon. He testified that he paid the premium to one employee of the defendant, who signed the name of another employee, his superior.

The employee to whom plaintiff testified he paid the premium denied that he did so and his superior, whose name was signed to the receipt, testified that the premium was paid to him and that at the time he accepted the money, he explained to plaintiff that his insurance policy had been transferred to California and that thereafter he would be expected to pay the insurance to the California office.

Plaintiff vigorously denies that the employee of defendant made any such statement to him. Each one has a good recollection of that part which transpired that pertains to his side of the case and no recollection as to what the other has to say about the case. The evidence shows rather convincingly that the testimony of the plaintiff was not entirely correct with reference to this

meeting of the parties, but it is likewise void of any worthy support that the testimony of the defendant's agent was in every respect correct.

This Court was impressed by the testimony of each of the witnesses as he listened to them and is of the opinion that neither was entirely correct in his delineation of what actually transpired on the date the premium was paid. Plaintiff was interested, of course, in paying the premium, which he did, and beyond that he should be excused for being inattentive to anything that defendant's agent said to him about the California transaction, because he knew full well what coverage he had secured from the California office and what coverage he had secured from the Pensacola office of the defendant. Defendant's agent was, I think, a little overzealous in trying to impress the Court with the effort he made to notify plaintiff that the Florida policy had been transferred to California and that a new policy would be substituted therefor in due course of time.

In this connection it should be noted that the new policy had not on that date been substituted and served upon defendant. That policy bearing date of February 16, 1956, was addressed to plaintiff and his wife at the Ontario, California, street address where neither of them was residing at the time and, of course, finally caught up with plaintiff in Panama City quite some time thereafter.

Counsel for each party have raised numerous technical questions of law as to the validity and invalidity of the insurance policy here sued upon and have cited cases in support of the positions taken by each. The Court does not feel that this case requires any extended discussion of these legal principles or of the cases dealing with them. The Court is of the firm opinion that the efforts of defendant to cancel out and defeat the Florida policy held by plaintiff failed, that defendant is liable thereon and that plaintiff is entitled to recover the full damages sued for in this action.

At the time the case was submitted to the Court, the parties stipulated that should the Court hold plaintiff entitled to recover that they would agree upon the amount of the judgment to be entered or stipulate any issues with reference thereto to the Court. As soon as this has been accomplished, final judgment will be entered herein in conformity with this Memorandum-Decision.