262 F.2d 183
 120 U.S.P.Q. 23
 EZEE STONE CUTTER MANUFACTURING COMPANY, a corporation, and
Bo Gann and James Willis, Appellants,
v.
SOUTHWEST INDUSTRIAL PRODUCTS, Inc., Appellee.
SOUTHWEST INDUSTRIAL PRODUCTS, Inc., Appellant,
v.
EZEE STONE CUTTER MANUFACTURING COMPANY, a corporation, et
al., Appellees.
 Nos. 15991, 15992.
 United States Court of Appeals Eighth Circuit.
 Dec. 24, 1958.
Rehearing Denied Jan. 21, 1959.
 
 LeRoy Powers, Oklahoma City, Okl., and Claude A. Fishburn, Kansas City, Mo. (P. H. Hardin, Hardin, Barton, Hardin & Garner, Fort Smith, Ark., and Delmer L. Stagner, Oklahoma City, Okl., were with them on the brief), for Southwest Industrial Products, Inc.
 A. Yates Dowell, Jr., Washington, D.C. (A. Yates Dowell, Washington, D.C., and Jack Rose, Fort Smith, Ark., were with him on the brief), for Ezee Stone Cutter Manufacturing Co. and others.
 Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 These are cross appeals arising under the patent laws of the United States.
 
 
 2
 Southwest Industrial Products, Inc., hereinafter referred to as plaintiff, is the appellee in appeal No. 15,991 and the appellant in appeal No. 15,992. Ezee Stone Cutter Manufacturing Company, et al., hereinafter referred to as defendants, are appellants in appeal No. 15,991 and appellees in appeal No. 15,992.
 
 
 3
 In the trial court plaintiff charged infringement of its Stone Cutter Patent No. 2,762,359 and its Trailer Patent No. 2,762,631 issued to one G. B. Entz, who originally instituted this suit and has since assigned all his right, title and interest arising under these patents to plaintiff. Plaintiff also charged defendants with unfair competition in allegedly simulating plaintiff's trade name 'Entz' alone and in an oval emblem by the use of 'Ezee' as defendants' trade name in an oval emblem. Plaintiff further charged that defendant Willis kept for defendants' use a customer list which was compiled while in the employ of Entz.
 
 
 4
 In 1949 or 1950, G. B. Entz (plaintiff's assignor) constructed his first machine for the purpose of cutting building stone. It consisted of two opposing jaws, each having a continuous blade brought together by hydraulic hand jacks in such a manner as to cut or break the stone. After considerable but not too satisfactory use, Entz devised an equalizing blade consisting of many individual chisels which would follow the contour of the stone, which the continuous blade would not. Working with the Crowl Machine & Heat Treating Plant of Oklahoma City, Entz completed and successfully tested such a machine in September, 1950. In 1951 eight such machines were manufactured and sold to the public and during 1952 and 1953 they were sold at a rate of two per month.
 
 
 5
 In July or August, 1951, Entz, assisted by one T. E. Mosley, designed and constructed a trailer with an off-set axle to transport the stone cutting machine. The trailer is a 4-wheel device on which the wheels may be raised or lowered hydraulically so that a machine mounted thereon can be lowered to the ground for operation and raised for transportation to another location. After the design of the first trailer in 1951 practically all of Entz's stone cutters were mounted on trailers before being sold to the public. For a more detailed and technical description of the trailer, see the trial court's Finding No. 8 at page 211 of 157 F.Supp.
 
 
 6
 Up until the fall of 1953 Entz had made only minor changes in the stone cutter, but at that time, as found by the trial court, several improvements were added. 157 F.Supp. at page 210:
 
 
 7
 '(1) pivoting of the wedges to their shanks (prior to this the wedges had been bolted in, and trouble was experienced with bolts breaking and in turn causing the stone to be broken or cut incorrectly); (2) providing a gable on one side of the head of the knives or chisels to provide a continuous cutting edge (prior to this there was a gap between each set of two chisels, and these gaps tended to cause some breakage of the stone and to prevent a perfectly straight break); (3) a hydraulically operated gauge was added to determine the widths of the cut of the stone, and said gauge was designed to operate automatically (before this the gauge did not work automatically but was controlled by the operator of the machine); (4) some change was made in the washing system relating to the shanks of the lower chisels (the evidence was not clear as to the exact nature of this change, and apparently it was a minor one).'
 
 
 8
 Entz's stone cutting machine with these improvements was first publicly displayed in Washington, D.C., in January, 1954.
 
 
 9
 On November 9, 1954, Entz applied for a patent on his stone cutter. Except for the four improvements stated above this machine was the same as he was selling prior to November 9, 1953. The application was twice denied. Upon requested reconsideration, however, it was on September 11, 1956, granted as patent No. 2,762,359.
 
 
 10
 As to Entz's trailer, apparently the only improvement of possible consequence was made in the early part of 1953 when there was a change in the location and hook-up of the link machanism.
 
 
 11
 On November 2, 1953, Entz applied for a patent on his trailer, which was the same as the original in all respects except for the above-mentioned location of the link mechanism hook-up. This application also was twice denied but upon further reconsideration approved on September 11, 1956, as patent No. 2,762,631.
 
 
 12
 From 1950 until November, 1956, Entz was continuously engaged in the business of developing, manufacturing and marketing stone cutting machines. He used the name 'Entz' on all his stone cutters, and a great majority of the stone cutting machines now in use in the United States are Entz machines. After spending substantial sums of money in advertising, the stone cutter had become a commercial seccess and the name 'Entz' has acquired a secondary meaning in the stone industry.
 
 
 13
 In the summer of 1955 defendant Willis went to work for Entz in the Oklahoma City plant. During his employment Willis became familiar with the Entz stone cutter and took measurements of various parts of these machines. At the same time he, Willis, obtained and compiled a list of prospective buyers of stone cutters. While in Entz's employ Willis discussed with other employees the possibility of leaving Entz and going into a competing business.
 
 
 14
 After leaving the employment of Entz in March of 1956, Willis and defendant Gann offered to purchase the business from Entz. They did not succeed in doing so. Subsequently Willis and Gann formed a partnership, employed a former employee of Entz, who built them a stone cutting machine which they sold for $1,500.00. On September 17, 1956, the defendants formed the Ezee Stone Cutter Manufacturing Company and thereafter built another machine. The two machines built by defendants are in all substantial respects the same as the Entz machine. The first machine which defendants manufactured, bearing an emblem very closely resembling the Entz emblem used on Entz stone cutters and advertising material, was sold before September 11, 1956. The second machine has not been sold. The defendant corporation has also used the emblem, similar to Entz's, on one of its trucks. Many of the parts used by defendants in the manufacture of their two machines were purchased from Crowl and were parts that Crowl had actually manufactured for Entz.
 
 
 15
 The case was tried to the court without a jury. In an able and comprehensive opinion, published in 157 F.Supp. 208, the court found that claims 10 and 11, relating to chisels with gable-like projections (improvement No. 2 set forth, supra), and claim 12, relating to the improvement of pivoting the wedges to their shanks (set forth as improvement No. 1, supra), were valid inventions and had been infringed by the defendants; that the evidence was insufficient to show damages sustained by plaintiff as a result of the infringement; that the trailer patent was invalid; that the defendants had been guilty of unfair competition and should be enjoined from using similar labels on their products; and, finally, that the defendants should furnish plaintiff a copy of the list of prospective customers compiled by Willis during his employment with Entz. From this judgment, Southwest Industrial Products, plaintiff, appeals the court's holding of invalidity as to the trailer patent. All other holdings referred to above are appealed by the defendants. Additional holdings of the District Court are not the subject of appeal and are, of course, not discussed herein.
 
 
 16
 We consider first No. 15,992 wherein the trial court held that the trailer patent No. 2,762,631 was invalid because it had been in public use and on sale for more than a year prior to November 2, 1953, the date of the filing of the application for patent. On appeal here it is contended by the plaintiff that the use of the trailer, as originally designed, more than a year prior to the filing of the patent application was necessary testing and experimentation, was not for an unreasonable period of time and did not constitute a public use within the meaning of 35 U.S.C.A. 102(b). It is further contended on appeal that the change in the 'hook-up and location' of the linkage of the trailer constituted a new combination of old elements whereby a new and useful result was produced or an old result was obtained in a more facile, economical and efficient way and therefore an invention and entitled to be protected by a patent. The record discloses that a very substantial number of trailers was manufactured and sold to the public more than a year prior to the filing of the application for patent; that no change was made in the trailer within one year prior to the application for patent excepting only the location and hook-up of the link mechanism. The determination by the trial court that such improvement (157 F.Supp. at page 214)
 
 
 17
 '* * * involved nothing more than mechanical skill, and since the trailer, with the exception of this change, had been in public use and on sale more than one year prior to the time Entz applied for the patent, the trailer patent, No. 2,762,631, is invalid in its entirety',
 
 
 18
 is a finding of fact which is supported in the record and may not be disturbed here.
 
 
 19
 We next consider No. 15,991, involving the stone cutter patent and its various improvements. After finding on conflicting evidence that Entz was the inventor of the stone cutting machine, '* * * if in fact it should be determined that an invention is involved,' the trial court stated, at page 214 of 157 F.Supp.:
 
 
 20
 'The defendants also contend strongly that the stone cutting machine in all its substantive aspects was in public use and on sale more than a year prior to November 9, 1954, the date Entz applied for a patent. Here again the evidence was conflicting, but in Finding of Fact No. 7 (supra) the Court found that four improvements were added to the stone cutting machine in the fall of 1953 and were not publicly displayed until January of 1954, which was within one year of the date of the application. With the exception of these four improvements the stone cutting machine had been in public use and on sale more than one year prior to the date of the application.'
 
 
 21
 After holding that (at page 215 of 157 F.Supp.)
 
 
 22
 'In the instant case the improvements made within the one-year period were not sufficient to reactivate any invention that may have been contained in the stone cutting machines which had been on sale for several years,'
 
 
 23
 and disposing of other questions not at issue here, the trial court held that claims 10, 11 and 12, being improvements within the one-year period, were valid and had been infringed. It is from these conclusions alone, excepting as herein subsequently indicated, that appeal by defendants has been perfected. The court stated, at page 216 of 157 F.Supp.:
 
 
 24
 'Claims 10 and 11 relate to the chisels with gable-like projections designed to provide a continuous cutting edge on the machines. Prior to this improvement there had been gaps between each set of two chisels, and the gaps tended to cause breakage of the stone and to prevent perfectly straight breaks or cuts of the stone. The gabled chisels solved this problem. This is an improvement which was not anticipated by the prior art, and the Court is convinced that claims 10 and 11 are valid. Although at first blush the gabled chisels seem rather a simple improvement, the improvement takes on additional significance when it is observed that prior inventors working in this field had failed to conceive or use such a principle. In E. L. Bruce Co. v. Bradley Lumber Co., D.C.W.D.Ark., 79 F.Supp. 176, 182, this Court noted that 'Simplicity of a process is not an objection and does not militate against the patentability of the process'. And in Pointer v. Six Wheel Corp., 9 Cir., 177 F.2d 153, 161, the Court pointed out the fact that even a slight improvement may be an invention where it was not indicated by the prior art. It should also be remembered that 'hindsight' is not a proper basis for determining patentability. Holstensson v. Webcor, supra, at page 447 of 150 F.Supp.
 
 
 25
 Therefore, the Court is of the opinion that claims 10 and 11 are valid.
 
 
 26
 'Claim 12 relates to the improvement of pivoting the wedges to their shanks. This improvement falls in the same category as the gabled chisels. The pivoted wedges were not disclosed by the prior art, and the Court is convinced that the improvement amounted to an invention and that claim 12 is valid.'
 
 
 27
 In considering the determination by the trial court of the validity of claims 10, 11 and 12, we have in mind what we said in Long v. Arkansas Foundry Co., 8 Cir., 1957, 247 F.2d 366, 369:
 
 
 28
 'The issuance of a patent is prima facie evidence of both novelty and utility (see 35 U.S.C.A. 282), and when one attacks a patent he must make good his attack with reasonable clearness. He has the burden of proof, and every reasonable doubt will be resolved against him. Donner v. Sheer Pharmacal Corporation, 8 Cir., 1933, 64 F.2d 217, 221, and cases cited; G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 1941, 115 F.2d 958, 964-965.
 
 
 29
 In a case where the patentability of a claimed invention is in issue, evidence of commercial success is admissible and may be forthcoming. In a doubtful case, such evidence may turn the scale in favor of the plaintiff. See Donner v. Sheer Pharmacal Corporation, supra, at page 221 of 64 F.2d, and cases cited.
 
 
 30
 In such a case, evidence that the patent device or combination solved a long-felt want and an old problem which had baffled those skilled in the art is also admissible. Expanded Metal Co. v. Bradford, 1908, 214 U.S. 366, 381, 29 S.Ct. 652, 53 L.Ed. 1034; G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 1941, 115 F.2d 958, 964.'
 
 
 31
 We have examined the record here in detail and are convinced that the defendants have presented nothing more or less than disputed questions of fact. In innumerable cases this court has said that it would not substitute its judgment for that of the finder of the facts, whether the jury or the court without a jury. Additionally, defendants here have failed to overcome the statutory presumption of validity (35 U.S.C.A. 282) and every reasonable doubt must be resolved against them. We accordingly hold that as to claims 10, 11 and 12 the findings and conclusion of the trial court must remain undisturbed.
 
 
 32
 The defendants here attempt to make an additional point of the trial court's upholding of claims 10, 11 and 12 as being inconsistent with its finding that such improvements, having been made within one year before the application for patent, were nevertheless insufficient to revive patentability in the original stone cutting machine, which the court held to be manufactured, sold and publicly used more than a year prior to the application. Defendants also argue that, 'At the least we believe that the decision of the lower Court upholding claims 10, 11 and 12 should be entitled to less weight than ordinarily.' The trial court makes apt answer to defendants' contention, pointing out that, (at page 215 of 157 F.Supp.) 'Each claim of a patent is a separate grant or invention,' citing numerous cases and quoting the applicable portion of 35 U.S.C.A. 253 as follows:
 
 
 33
 'Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid.'
 
 
 34
 The court also relied on Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 319, 29 S.Ct. 495, 501, 53 L.Ed. 805, wherein the Supreme Court stated:
 
 
 35
 'Claims are independent inventions. One may be infringed, others not, and the redress of the patentee is limited to the injury he suffers, not by the abstract rights which have been granted him in other claims. One claim may be valid, all the rest invalid; invalid for the want of some essential patentable attribute. But what is good remains and is unaffected by its illegal associates. In such cases the patent does not stand or fall as a unity.'
 
 
 36
 We agree with the trial court that, page 215 of 157 F.Supp., '* * * the invalidity of some of the claims because of prior use and sale does not destroy the possible validity of the claims relating to improvements made within the one-year period.'
 
 
 37
 Defendants next contend that their use of 'Ezee' does not unfairly compare with plaintiff's use of 'Entz' regardless of whether the names are in an oval emblem. The trial court found, page 217 of 157 F.Supp.:
 
 
 38
 'The emblem used by defendants is so similar to the Entz emblem that the public would likely be confused, and plaintiff is entitled to an injunction enjoining defendants from using a label substantially similar to the Entz label.
 
 
 39
 'The same thing is true with regard to the name 'Ezee' adopted by defendants. Clearly this name was adopted by defendants in an effort to capitalize on the advertising done by Entz, and the use of said name is designed to and probably would confuse the buying public. It follows that plaintiff is entitled to an injunction enjoining defendants from using the name 'Ezee' on their machines or in their advertising. The fact that the defendants' machines are similar in over-all appearance to the Entz machines is not in itself likely to confuse the buying public, and plaintiff is not entitled to an injunction in this regard. Compare, Oriental Foods, Inc., v. Chun King Sales, Inc., 9 Cir., 244 F.2d 909.' Whether the use of the name 'Ezee' in an oval emblem or without renders it so similar to the 'Entz' label that it deceives or will probably deceive purchasers, causing them to buy the machine of the defendants in the belief that it is the machine of the plaintiff is a question of fact. That issue was for determination by the trial court. Here, again, we must point out that the defendants are in reality asking for a retrial of a disputed fact issue in an appellate court. Even if we were inclined to do so, we could not substitute our judgment for that of the trial court unless there was no substantial evidence to sustain it or it was against the clear weight of the evidence or induced by an erroneous view of the law. See Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 1943, 139 F.2d 416, 417-418, 150 A.L.R. 1056, certiorari denied, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074; Seven-Up Co. v. Cheer Up Sales Co. of St. Louis, Mo., 8 Cir., 1945, 148 F.2d 909, 911; Checker Food Products Co. v. Ralston Purina Co., 8 Cir., 1956, 232 F.2d 477. The plaintiff here had the burden of proving confusing similarity. The court found that it had sustained such burden and that the emblem used by the defendants was so similar to the 'Entz' emblem that the public would likely be confused. The plaintiff, as the prevailing party, is entitled here to the benefit of all reasonable inferences which can be drawn from the evidence viewed in the aspect most favorable to it. See Cleo Syrup Corp. v. Coca-Cola Co., supra, 139 F.2d at page 418: 'In determining whether there is a sufficient evidentiary basis for the court's findings of fact, we must take that view of the evidence and the inferences deducible therefrom which is most favorable to the plaintiff.'
 
 
 40
 The trial court's findings are well supported in the record and its conclusions, based thereon, reasonable and sound. They may not be disturbed here.
 
 
 41
 We have considered all points raised in both appeals and conclude that the judgment should be in all things affirmed.