## G. H. PACKWOOD MFG. CO. v. ST. LOUIS JANITOR SUPPLY CO.

### No. 11760.

Circuit Court of Appeals, Eighth Circuit.

Dec. 12, 1940.

Rehearing Denied Jan. 9, 1941.

Edmund C. Rogers and Lawrence C. Kingsland, both of St. Louis, Mo. (Kingsland, Rogers & Ezell and Estill E. Ezell, all of St. Louis, Mo., on the brief), for appellant.

Frank L. A. Graham, of Los Angeles, Cal. (Edwin E. Huffman, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

SANBORN, Circuit Judge.

This appeal is from a decree in a suit brought to enjoin, and to recover damages for, the alleged infringement of United States Letters Patent No. 1,863,871, issued on June 21, 1932, to George H. Packwood, Jr., for a dispenser for finely divided material, such as powdered soap, which decree adjudged that Claims 1 and 4 of the patent were invalid, that Claim 1 was not infringed, and that the plaintiff was entitled to no relief. The G. H. Packwood Manufacturing Company, owner of the patent, was the plaintiff in the court below, and the St. Louis Janitor Supply Company was the defendant. (The parties will be referred to as "plaintiff" and "defendant".)

The defenses asserted were anticipation, lack of invention, and noninfringement. The claims in suit were numbers 1 and 4 of the patent, which read as follows:

"1. A dispenser for finely divided material including a hollow body having a tapering bottom portion with a central opening therein, a vertical plunger movably mounted in said body and extending through the opening in said bottom portion, said plunger being reduced in size for a short distance above and below the part passing through said opening and a dispenser cup member secured to said plunger below said bottom portion."

"4. A dispenser for finely divided material including a hollow body having a bottom portion with a central opening therein, a vertical plunger movably mounted in said body and extending through the opening in said bottom portion, a member in said body in position to be engaged by said plunger on its upward stroke, whereby movement of said plunger and the force of the impact agitate and loosen said finely divided material and cause a portion thereof to fall through said bottom opening and a dispenser member secured to said plunger below said bottom portion of said body."

The plaintiff manufactures and sells powdered-soap dispensers under the Packwood patent. The defendant sells similar dispensers which it procures from the Pacific Coast Borax Company and which are manufactured under United States Patent No. 1,993,401 issued to William A. Dudley on March 5, 1935, and assigned to the Borax Company. The structure and operation of plaintiff's soap dispenser and of that sold by defendant can be understood more clearly if illustrated than described. The accompanying drawings sufficiently disclose

the structure and operation of these dispensers.

followed his profession as an engineer successfully and with distinction. In 1926 he

PACKWOOD PATENT
1,863,871
PLAINTIFF'S DISPENSER

DUDLEY PATENT
1,993,401
DEFENDANT'S DISPENSER

George H. Packwood, Jr., the patentee, is an electrical and mechanical engineer who is a graduate of the Alabama Polytechnic Institute (1910). From 1911 until he went into the soap business in 1926, he organized the plaintiff company and became its president. In 1912, while he was employed by a railroad company, he noticed that the men in the shop had many kinds of hand soap to wash with, which,

though efficient, irritated the skin of the users. He began an investigation of the hand soap field, and carried on extensive experiments in his own laboratory for the purpose of developing a soap which would be efficient and nonirritating. In 1926 he concluded that he had developed a formula for a satisfactory hand soap, and from that time on he has devoted his entire time to the development and sale of hand soap. After he went into this business, he found that if he desired to sell such soap to plant managers for the use of their employees, he would have to furnish an efficient powdered-soap dispenser. He then started the development of soap-dispensing equipment, and during the years 1926 to 1930 he produced several kinds of such dispensers, including those which operated with a crank like the old-fashioned flour sifter and also those of the tilt type. In 1930 the American Telephone & Telegraph Company, after testing his soap, approved it, but disapproved the tilt type of dispenser which he had submitted to it. Its disapproval was based on the ground that that type of dispenser was unsanitary. He was advised by that company that if he could develop a dispenser which could be operated with one hand and which was satisfactory, the company would purchase his soap and his soap dispensers. What was wanted was a rugged soap dispenser which could be operated with one hand; which had few moving parts; which would continue to operate efficiently; and which would dispense soap economically. Packwood then developed the type of dispenser covered by the patent in suit, which met with the approval of the American Telephone & Telegraph Company, and that company and its affiliates purchased soap dispensers from the plaintiff. The Packwood dispenser has proved practical and useful, and some twelve thousand of them have been sold and are now in use.

It clearly appears from the record that, in order to have a practical and efficient dispenser for powdered soap, it is necessary to have a container which will hold the soap, dispensing means which will dispense it in measured quantities, and means for agitating or jarring the contents as soap is dispensed, so that the soap in the container will continue to flow. The dispensing means devised by Packwood is of the flow type; that is, the soap flows by gravity from the dispenser. When the plunger is at rest, the flow of soap is caused to be dammed up in the outlet by the cup which is attached to the plunger and which is just below the discharge outlet of the container. The amount of soap dispensed with each operation of the plunger is, roughly, the amount which is held by the cup, and this amount can be controlled by varying the size of the cut-out portion of the plunger at the point where the plunger passes through the discharge outlet. When the plunger is pushed upward, it does two things: (1) it forces the powdered soap, which is in the cup and between the cup and the outlet, over the edges of the cup, whence it falls into the hand of the operator; and (2) it agitates the contents of the dispenser by causing the shoulder of the plunger, which is near the upper end of the plunger, to strike the crossbar, which causes vibration. When the plunger falls back into position, more agitation of the contents is caused, since the nuts at the upper end of the plunger then strike the crossbar.

The agitating means of the accused device (made under the Dudley patent) are in all substantial respects identical with those of the Packwood device. The plunger of Dudley produces agitation by the same means and in the same way; the shoulder of the plunger strikes the crossbar on the upward stroke, and the cotter pin—which is the equivalent of the nuts at the upper end of Packwood's plunger—strikes the crossbar as the plunger falls back into place. The dispensing means of the accused device differs from that employed in the Packwood device. There is no cup on the plunger of the accused device to catch and stop the flow of the soap from the container, and in normal operation no soap reaches the hand of the operator until the down stroke of the plunger takes place. The pockets or notches of the portion of the plunger which moves up and down through the discharge outlet of the container fill up with soap when the plunger is pushed upward through the outlet, and the size of the pockets determines the amount of soap which will be dispensed as the plunger is released. When the plunger falls, the soap in the pockets is drawn from the container through the discharge outlet, whence it falls by gravity into the hand of the operator.

Claim 1 of the patent in suit is for a combination consisting of (1) a hollow body having a tapering bottom portion with a central opening therein; (2) a vertical plunger movably mounted in said body and

extending through the opening in said bottom portion, said plunger being reduced in size for a short distance above and below the part passing through said opening; and (3) a dispenser cup member secured to said plunger below said bottom portion. Claim 1, we think, was clearly intended, and must be read, to cover the form of dispensing element described in Packwood's specification and shown by his drawings, when such element is combined with the other elements referred to in the claim. The claim is too narrow to cover a combination which includes a plunger not reduced in size at the point where it passes through the discharge opening and which has not the dispenser cup of Packwood. It is our opinion that the plunger and dispensing means of the accused device differ sufficiently from those of Packwood to avoid infringement of Claim 1.

Claim 4 of the Packwood patent is also for a combination, the essential elements of which are (1) a hollow body having a bottom portion with a central opening; (2) a vertical plunger movably mounted in the body and extending through the opening in the bottom portion; (3) a member in the body in position to be engaged by the plunger on its upward stroke to agitate the contents; and (4) a dispenser member secured to said plunger below said bottom portion of said body. This is a broader claim than Claim 1. Claim 4 reads upon the accused device unless the dispenser element of that device is not below the bottom portion of the body. Normally the dispenser element of the accused device is below the bottom portion of the body, and it certainly is below that portion when soap is being dispensed. We think that, unless Claim 4 is limited to the exact dispenser element described by Packwood in his specification and shown in his drawings, the accused device infringes Claim 4.

The defendant contends that, by the proceedings in the Patent Office, Claim 4 is limited to Packwood's own construction of the dispensing element. It appears that the Examiner regarded a patent issued to Lewin for a liquid-soap dispenser in 1923 as showing the equivalent of Packwood's dispensing and agitating elements. This resulted in Packwood's acquiescence in the rejection of three of his proposed claims, all of which were for a dispenser including as an element a plunger with a cup member secured to it, but none of which in-cluded agitation means as an element, as did Claim 4. The claim of the application which became Claim 4 of the patent was allowed without criticism or comment. It is of no consequence that, in the course of the proceedings in the Patent Office, the rejection of narrow claims was followed by the allowance of a broader claim. Westinghouse Electric & Mfg. Co. v. Condit Electrical Mfg. Co., 2 Cir., 194 F. 427, 430; Smith v. Snow, 294 U.S. 1, 16, 55 S.Ct. 279, 79 L.Ed. 721; See and compare, National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693, 714.

The defendant also contends that Claim 4 must be read in the light of the specification and drawings, and that, when so read, it is apparent that the accused device does not infringe, because the dispensing element attached to the plunger of that device is different.

The particular forms of devices described in specifications are to be considered as the forms which are preferred by the inventor. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 418, 28 S.Ct. 748, 52 L.Ed. 1122; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693, 715; J. L. Owens Co. v. Twin City Separator Co., 8 Cir., 168 F. 259, 266; McDonough v. Johnson-Wentworth Co., 8 Cir., 30 F.2d 375, 384. "An inventor must describe what he conceives to be the best mode, but he is not confined to that. If this were not so most patents would be of little worth. * * * The invention, of course, must be described and the mode of putting it to practical use, but the claims measure the invention. They may be explained and illustrated by the description." Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 418, 419, 28 S.Ct. 748, 751, 52 L.Ed. 1122. "In making his claim the inventor is at liberty to choose his own form of expression, and while the courts may construe the same in view of the specifications and the state of the art, they may not add to or detract from the claim." Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U.S. 399, 410, 25 S.Ct. 697, 702, 49 L.Ed. 1100. See, also, McDonough v. Johnson-Wentworth Co., 8 Cir., 30 F.2d 375; Smith v. Snow, 294 U.S. 1, 11, 55 S. Ct. 279, 79 L.Ed. 721. The character of a patent and its commercial and practical success may be such as entitle the inventor to broad claims and to a liberal construc-

tion of those he has made. Smith v. Snow, 294 U.S. 1, 14, 55 S.Ct. 279, 79 L. Ed. 721.

It is also to be remembered that the doctrine of equivalents is applied to other than primary or generic patents and that, while the range of equivalents depends upon the extent and nature of the invention, even a nongeneric or specific patent is entitled to some range of equivalents. "Any patent, however, has some range of equivalents, unless form is made the indispensable thing. And the rule is especially applicable where the infringer takes the whole gist of the invention, as in this case." Frick Co. v. Lindsay, 4 Cir., 27 F.2d 59, 62. See, also, McDonough v. Johnson-Wentworth Co., 8 Cir., 30 F.2d 375, 384; Freeman v. Altvater, 8 Cir., 66 F.2d 506, 510, 511.

It is argued, however, that the prior art limited, and in fact destroyed, Claim 4 of the Packwood patent. We think a detailed discussion of all of the prior art patents contained in the record is not necessary.

The patent to Lewin, cited as a reference by the Patent Office, shows a liquid-soap dispenser using a dispensing element not unlike the dispensing element of Packwood. Lewin's dispenser consists of a cup attached to the lower end of a rod which extends upwardly through the discharge opening of the container and is of less diameter than such opening. The rod is kept in place and its downward movement is limited by a pin at its upper end, which pin rests upon the bottom of the container when the rod is in its downward position. While the dispensing element of Lewin has, unquestionably, a similarity to that of Packwood, there is nothing in Lewin's patent to suggest any agitating element comparable to that of Packwood; there is no combining of impact agitation with a dispensing element.

The patent to Wideman, of 1914, shows a soap dispenser with a central opening at the bottom, a closure for the opening, a cover, and a coil spring having its lower end connected to the closure for holding it within the dispensing opening. The closure is operated by a knob below the bottom of the dispenser, which knob is connected to the closure by the lower axial portion of the coil spring. When the knob is pushed upward, it opens the closure so that the powdered soap falls from the dispenser. There is a guide just above the bottom of the container, through which the axial portion of the coil spring immediately above the closure passes, and above that is an "agitator" consisting of a plurality of arms projecting radially from the axial portion of the coil spring, which is just above the closure and the guide. It is claimed that the horizontal portion of the guide corresponds to the crossbar of the Packwood patent, and that the jarring of the guide by the closure would suggest the Packwood agitation element. If the device of Wideman is suggestive of the Packwood combination, it is only in the vaguest way. The Wideman device is not one for dispensing a measurable quantity of soap; it has no plunger, extending upward through the contents of the container, which has means for producing impact agitation such as is disclosed by Packwood and by Dudley.

The patent to Meves, issued in 1918, for a dispensing device, discloses a container in which a can with a perforated end can be placed with the perforated end down. There is a large opening in the bottom of the container, with a funnel underneath which has a closure operated by a plunger, and the upper end of the plunger is so located that when the closure is pushed upward the plunger will strike the perforated end of the can and cause the powder in the can to fall into and out of the funnel. What that patent teaches is that by tapping the perforated end of a can containing powder, powder will fall from the can. This was a matter of common knowledge. The device was not one which dispensed powder in measured quantities, and it did not even remotely suggest the combination disclosed by Packwood and later by Dudley.

The patent to McCord, issued in 1919, for a soap dispenser, discloses a dispensing element very similar to that used in the accused device, and with a crossbar, near the bottom of the container, for holding the plunger (which actuated the dispenser element) movably in place. At the upper end of the plunger, about the crossbar, a head was threaded on, and below the plunger was a coil spring to force the valve which closed the discharge opening back into position. The coil spring would effectually cushion any jarring of the crossbar on the upstroke of the plunger, and the contents of the container would prevent any substantial agitation on the downstroke. We think that, while McCord perhaps more closely approached the later combination of Packwood and of Dudley

than did others, McCord's device can hardly be said to point the way to them so clearly that the Packwood combination must be regarded as involving nothing but mechanical skill.

The French patent to de Saugy, issued in 1909, for a soap dispenser, shows a device with a container similar to that of Packwood and of Dudley, and with a plunger similarly located in the dispenser, but without having any shoulder at its upper end to strike the crossbar which in the de Saugy device serves merely as a guide. The dispensing element roughly corresponds with that of Packwood, and would, no doubt, dispense soap in measured quantities, but the agitation element of Packwood and of Dudley is lacking.

It is safe to say that, prior to Packwood, no patent, domestic or foreign, shown by the record, disclosed his combination or anything closely approaching it. There is no evidence that any of the combinations of the prior art successfully dispensed soap, which, after all, is the main purpose of a soap dispenser. The evidence indicates that Packwood's dispenser successfully dispenses, and continues to dispense, soap. While his contribution to the art was not that of a pioneer, the fact that all of the elements of his combination were old and that each had been used separately before in some device does not show lack of invention nor limit him so strictly to his peculiar structure as to destroy the worth of his patent. Rudimentary experiments with isolated elements of a combination do not anticipate or discredit invention. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 255, 8 S.Ct. 122, 31 L.Ed. 141; Smith v. Snow, 294 U.S. 1, 17, 55 S. Ct. 279, 79 L.Ed. 721. "It may be safely said that if those skilled in the mechanical arts are working in a given field, and have failed, after repeated efforts, to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor." Expanded Metal Co. v. Bradford, 214 U.S. 366, 381, 29 S. Ct. 652, 656, 53 L.Ed. 1034.

Claim 4 of the patent in suit is not for new elements, but is for combining old mechanical elements in a new way. A new combination of old elements, whereby a new and useful result is produced or an old result is obtained in a more facile, economical and efficient way, may be protected by patent as securely as a new machine or composition of matter. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693, 706, 707, and cases cited; McDonough v. Johnson-Wentworth Co., 8 Cir., 30 F.2d 375, 380.

The simplicity of the Packwood combination does not militate against its patentability. New York Scaffolding Co. v. Whitney, 8 Cir., 224 F. 452, 457; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 434, 435, 31 S.Ct. 444, 55 L.Ed. 527; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523; Jensen-Salsbery Laboratories, Inc., v. Salt Lake Stamp Co., 8 Cir., 28 F.2d 99, 101, 102, and cases cited; Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217, 221, 222 and cases cited; Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389, 394.

The following language from the case of Trane Co. v. Nash Engineering Co., 1 Cir., 25 F.2d 267, 269, is pertinent here:

"The Eibel Case [261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523] certainly admonishes this court to give great weight to the practical results from a claimed invention; to look beyond the paper expression to the state of the art, before and after an alleged invention which is tested in actual practice. Dubilier Condenser Corp. v. New York Coil Co. (C.C.A.) 20 F.2d 723, 725; Minerals Separation v. Hyde, 242 U.S. 261, 270, 37 S.Ct. 82, 61 L.Ed. 286.

"An invention is a real thing; a patent is the description of it in words and/or drawings. McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800. The description must be reasonably adequate, in order to warn the public and competitors of the nature and extent of the monopoly claimed. But the essence of the matter is a new and useful reality, frequently best tested and demonstrated by actual experience."

The issuance of a patent is prima facie evidence of both novelty and utility. When one attacks a patent he must make good his attack with reasonable clearness. The burden of proof is upon him and every reasonable doubt must be resolved against him. While commercial suc-

cess cannot convert mechanical skill into invention, it may, in doubtful cases, constitute evidence of invention. Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217, 220-222; Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389, 394.

The defendant is in a poor position to urge want of invention. Dudley, whose patent covers the accused device, considered that such a combination of elements as Packwood first, and Dudley later, disclosed involved invention. The adoption by Dudley and by the defendant of the Packwood combination, or what is its substantial equivalent, was a sincere tribute to Packwood's discovery (Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389, 395, and cases cited) and was in the nature of a concession that Packwood had made an advance in the art which possessed both novelty and utility. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 441, 31 S.Ct. 444, 55 L.Ed. 527. Moreover, the Patent Office twice ruled that such a combination involved patentable invention—once when it granted the patent to Packwood, and, the second time, when it granted the patent to Dudley.

When the appropriate rules of law are applied to the evidence in this case, we think that the only conclusion which can properly be drawn is that Claim 4 of the patent in suit is valid. We are, therefore, of the opinion that the finding of the court below that Claim 4 was void for want of invention was clearly erroneous. We are also of the opinion that the substitution by Dudley of his dispensing element for that of Packwood did not make the accused device a new and noninfringing combination, but a combination which produced the same result as the Packwood device in substantially the same way and by substantially the same means. The court below did not find noninfringement of Claim 4. It should have found that Claim 4 was valid and was infringed.

The determination of the court below that Claim 1 of the patent was invalid and was not infringed is supported by substantial evidence, is not clearly erroneous, and is binding upon this court.

With respect to Claim 1, the decree is affirmed. With respect to Claim 4, the decree is reversed. The case is remanded, with directions to amend the decree to conform with this opinion and for further proceedings not inconsistent herewith.