Robert E. CALDWELL, an Individual, and Caldwell Manufacturing Company, a Corporation, Appellants,

v.

KIRK MANUFACTURING COMPANY, a Corporation, Appellee.

No. 16158.

United States Court of Appeals Eighth Circuit.

Aug. 13, 1959.

in making and marketing the patented device. The defendants (appellants) make and sell a similar device originated by Robert E. Caldwell, which is alleged to infringe the Kirk patent. The accused Caldwell device is covered by two patents: No. 2,706,465 issued on April 19, 1955, and No. 2,785,653 issued on March 19, 1957, both for a "Livestock Oiler and Applicator Apparatus." The defendant Caldwell Manufacturing Company, a Nebraska corporation, with its principal place of business at Kearney, Nebraska, is the assignee of the Caldwell patents.

In answering the plaintiff's amended complaint, the defendants denied infringement of the Kirk patent in suit, and alleged that it was invalid for lack of invention. The issues were tried to the District Court, Claims 1, 7, 11, 17 and 19 of the patent being in controversy. In a carefully considered and comprehensive opinion (163 F.Supp. 157), the District Court determined that the patent claims in issue were valid and that they had been infringed by the defendants.

So far as the question of infringement is concerned, we have no doubt that if the Kirk apparatus for anointing livestock with oil or insecticide reveals inventive genius, and not merely the skill of a mechanic familiar with the art, the finding of infringement must be sustained. See and compare, McDonough v. Johnson-Wentworth Co., 8 Cir., 30 F.2d 375, 383–385 and cases cited; Koochook Co., Inc. v. Barrett, 8 Cir., 158 F.2d 463, 465. Needless to say, if the Kirk patent is invalid for want of invention, as the defendants argue, there can be no infringement of its claims. Briggs & Stratton Corporation v. Clinton Machine Co., Inc., 8 Cir., 247 F.2d 397, 400–401.

It is the question of the validity of the Kirk patent which gives us concern. The Kirk apparatus or device is a combination of old elements which, it is claimed, act in concert to produce a new and useful entirety which rises above the level of its parts and is at-

Donald H. Zarley, Des Moines, Iowa (M. Talbert Dick, Des Moines, Iowa, and Herman Ginsburg, Lincoln, Neb., on the brief), for appellants.

Carter H. Kokjer, Kansas City, Mo. (Thomas E. Scofield, Kansas City, Mo., Warren C. Johnson, and Cline, Williams, Wright & Johnson, Lincoln, Neb., on the brief), for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for the Kirk Manufacturing Company, plaintiff (appellee), in a patent infringement action. The patent in suit is No. 2,581,028 issued to William M. Kirk on January 1, 1952, for an "Animal Rubbing and Oiling Station or Apparatus." The plaintiff owns the patent and is engaged

tributable to inventive genius. It is true, as the District Court points out, that the defendants, who succeeded in procuring patents on their accused apparatus—also composed of old elements and which constitutes no appreciable advance over Kirk —are in a poor position to urge that Kirk's contribution to the art was unpatentable. Nevertheless, as this Court said in Long v. Arkansas Foundry Company, 8 Cir., 247 F.2d 366, 369, "The public is a silent but an important party in interest in all patent litigation * * *." A device which is new and useful but which falls short of revealing more than mechanical skill "has not established its right to a private grant on the public domain." Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58.

Mr. Justice Douglas in his concurring opinion in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 154–155, 71 S.Ct. 127, 131, 95 L.Ed. 162, said:

"Every patent is the grant of a privilege of exacting tolls from the public. The Framers [of the Constitution] plainly did not want those monopolies freely granted. The invention, to justify a patent, had to serve the ends of science—to push back the frontiers of chemistry, physics, and the like; to make a distinctive contribution to scientific knowledge. That is why through the years the opinions of the Court commonly have taken 'inventive genius' as the test. It is not enough that an article is new and useful. The Constitution never sanctioned the patenting of gadgets. Patents serve a higher end—the advancement of science. An invention need not be as startling as an atomic bomb to be patentable. But it has to be of such quality and distinction that masters of the scientific field in which it falls will recognize it as an advance. * * *

"The standard of patentability is a constitutional standard; and the question of validity of a patent is a question of law. * * *"

In the majority opinion in the Great Atlantic & Pacific Tea Co. case, the Supreme Court took pains to say (at pages 152–153 of 340 U.S., at page 130 of 71 S.Ct.):

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

And in conclusion said (at page 154 of 340 U.S., at page 131 of 71 S.Ct.):

" * * * The defect that we find in this judgment is that a standard of invention appears to have been used that is less exacting than that required where a combination is made up entirely of old components. * * *"

This Court, as well as the Supreme Court, has recognized that if a trial court in a patent case has failed to apply proper legal standards in determining the presence or absence of invention, its finding upon that issue will be reversed on appeal as clearly erroneous. See: Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497, 502–503; Koochook Co., Inc. v. Barrett, supra, at pages 466–467 of 158 F.2d That is saying no more than

that a finding of fact which is induced by an erroneous view of the law is erroneous.

More exacting standards for determining patentable invention have been applied by the courts in recent years than was formerly the case. In Trico Products Corporation v. Delman Corporation, 8 Cir., 180 F.2d 529, 533, this Court said:

"* * * It is, no doubt, true that this Court is applying higher standards than it formerly did for determining whether patented improvements of practical value and which have met with commercial success involve invention or only mechanical skill. Compare, G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 115 F.2d 958, with Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., supra, 148 F.2d 497. The Supreme Court has, we think, raised the standards of originality necessary to sustain patents for improvements such as those involved in the instant cases, regardless of their usefulness or commercial success. Compare, Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, and Temco Electric Motor Company v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298, with Cuno Engineering Corp. v. Automatic Devices Corp., supra, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58."

See also Hall Laboratories, Inc. v. Economics Laboratory, Inc., 8 Cir., 169 F.2d 65; Alemite Co. v. Jiffy Lubricator Co., 8 Cir., 176 F.2d 444, 448–449; Miller v. Tilley, 8 Cir., 178 F.2d 526, 528; Steffan v. Weber Heating & Sheet Metal Co., 8 Cir., 237 F.2d 601, 604; and the concurring opinion in Briggs & Stratton Corp. v. Clinton Machine Co., Inc., 8 Cir., 247 F.2d 397, 400–401.

The vital question in this case is whether the Kirk device for oiling animals—or, rather, for enabling the animals to oil themselves—advanced that art sufficiently to entitle Kirk to a patent monopoly for his device. The Kirk device consists of: A large horizontal base made up of interconnected tubular members; a centrally-located, hollow, upright, metal cylindrical tank, supported by and fastened to the base. The tank serves as a reservoir for insecticide or oil, and as a support for the rubbing and oiling elements. Extending outwardly and downwardly from short troughs or flow ways at the upper end of the cylindrical reservoir are two oppositely-disposed flexible cables or catenaries, upon which are strung metal washers. The lower ends of the cables are secured to the extremities of the base. The upper ends are connected with the flow ways, which are a part of the means provided by Kirk for causing the oil, after being lifted from the reservoir, to flow downward onto the cables and the washers which constitute the rubbing and oil-applying elements of the device. The means provided for elevating oil from the reservoir to the flow ways are a pair of chain-type pumps, each of which is set in motion whenever an animal rubs against the cable, the distortion of which activates that pump.

Reduced to its simplest terms, Kirk's contribution to the art of oiling an animal consists of (1) a horizontal base, (2) an upright tank, (3) two loosely-hung cables or catenaries extending from the top of the tank downwardly to the ends of the base, and (4) the means for raising liquid from the reservoir to flow down the cables when needed.

The record shows that long before Kirk it was a matter of common knowledge that domestic animals would rub against trees, posts and guy wires of poles or of fence posts, to relieve their itching, and that being infested with and annoyed by insects was harmful to such animals. The record also shows that homemade devices, such as chains or wires strung from or between posts and hung with oil-impregnated sacking or the like, had long been used as a means of enabling cattle to oil themselves and relieve their itching. Kirk's conception of the solution to the cattle-oiling problem

was, of course, based upon his knowledge that livestock would rub themselves against the cables of his device, which, for rubbing purposes, are the equivalent of loose guy wires, and that if oil could be fed to the cables when it was needed it would reach the hide of the animals and accomplish the desired result. While there are many prior art patents having to do with furnishing the means for oiling animals, none of them can be said to be an anticipation of Kirk. There is, however, no unbridgeable gap between the rubbing and oiling means disclosed in the patent to Curttright, No. 1,327,-088, issued January 6, 1920, and those of the patent in suit. It cannot be said that Kirk did much more than bring together segments of or gleanings from the prior art or that what he did exceeded what reasonably could be expected of a skilled mechanic familiar with the prior art.

If the correct criteria of invention were the same today as they were thought to be at the time this Court decided such cases as McDonough v. Johnson-Wentworth Co., supra, 8 Cir., 30 F. 2d 375; Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389, and G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 115 F.2d 958, we would be inclined to agree with the trial court that the novelty, utility, commercial success, and public acceptance of the Kirk combination, shown by the record, would, together with the presumption of validity of his patent, be enough to sustain the finding of the validity of its claims. We think, however, that under the more exacting standards established by the Supreme Court in the cases which are cited in Briggs & Stratton Corporation v. Clinton Machine Co., Inc., 8 Cir., supra, at page 401 of 247 F.2d, the Kirk combination of old components, in view of what was common knowledge and what was disclosed by the prior art, cannot be held to rise to the dignity of patentable invention.

Under what we understand to be the latest teachings of the Supreme Court with respect to the standards of invention necessary to sustain the grant of a patent monopoly, we are of the opinion that the Kirk patent is invalid for want of invention.

The judgment appealed from is therefore reversed and the case remanded with directions to dismiss the action.