**NISSEN TRAMPOLINE COMPANY and George P. Nissen, Plaintiffs,**

v.

**AMERICAN TRAMPOLINE CO., Defendant.**

Civ. No. 4-947.

United States District Court
S. D. Iowa,
Central Division.

April 4, 1961.

746

Owen J. Ooms, Donald L. Welsh, Chicago, Ill., Neill Garrett, Des Moines, Iowa, for plaintiff.

Talbert Dick, Donald H. Zarley, Des Moines, Iowa, for defendant.

STEPHENSON, District Judge.

Plaintiff, Nissen Trampoline Co., an Iowa Corporation of Cedar Rapids, Iowa, brings this action for injunction and for damages against defendant, American Trampoline Co., an Iowa Corporation of Jefferson, Iowa. Plaintiff alleges unfair competition, trade-mark infringement and patent infringement. Defendant in addition to denying plaintiff's claims, files counterclaims asking the court to declare plaintiff's trade-marks invalid, to declare plaintiff's patent invalid, and seeks damages from plaintiff for plaintiff's alleged false and fraudulent registration of plaintiff's trade-mark and plaintiff's harassment of defendant's business. Plaintiff George P. Nissen was joined as a plaintiff-respondent upon defendant's motion on the ground that he was a necessary party for defendant's counterclaim.

This suit arises under the patent and trade-mark laws of the United States and under the laws relating to unfair trade practices and unfair competition. The matter in controversy exceeds $10,-000, exclusive of interest and costs and the court has jurisdiction of the subject matter and the parties. Title 15 U.S.C. A. § 1121; Title 28 U.S.C. §§ 1331 and 1338.

Plaintiff, Nissen Trampoline Co., hereinafter referred to as Nissen, is engaged in the manufacture and sale of gymnastic equipment, including devices it labels: "Nissen Trampolines" and "Mini-tramp". Defendant, American Trampoline Co., hereinafter referred to

as American, is engaged in the manufacture and sale of gymnastic equipment, including devices it labels: "trampoline", "Divo-tramp" and "Tini-Tramp". Plaintiff corporation is a successor in business of George Nissen, d/b/a Nissen Trampoline Co., a sole proprietorship from at least as early as March 27, 1935 until he was succeeded by plaintiff corporation on July 21, 1946. George Nissen, in addition to being the sole proprietor of Nissen Trampoline Co., was a member of and successor to Griswold & Nissen, a partnership existing from approximately August 1941 to April 1946 and composed of George Nissen, who owned 75% interest in the firm and Larry P. Griswold, who owned the remaining 25%. The partnership of Griswold and Nissen and the sole proprietorship of George Nissen's, were engaged in a similar business of manufacturing and selling gymnastic equipment known as "trampolines."

Defendant, American Trampoline Co., a corporation since October 1, 1957, was preceded in business by partnerships known as the American Trampoline Co., The American Trampolin Co., and the Aqua Trampoline Co. Defendant company's predecessors were similarly engaged in manufacturing and selling a device called a "trampoline".

Plaintiff George Nissen, president of plaintiff corporation, attended the State University of Iowa from 1933 to 1937 and was a national ground tumbling champion during three years of varsity competition. As early as 1935, Mr. Nissen began to experiment and sell a tumbling device that he then called a "trampoline."

Mr. Bill W. Sorenson, is president of defendant corporation and was a partner in the partnership that preceded defendant corporation; he graduated from the State University of Iowa in 1953 where he was a Big Ten conference trampoline champion, and was instrumental in forming the first of defendant's predecessors known as Aqua Trampoline Co.

Prior to the entry of plaintiff, George Nissen, into the business of manufacturing and selling this type of gymnastic apparatus in 1935, the only available equipment of this type was handmade or custom made. There was no commercial manufacturing of this type of apparatus.

On June 4, 1941, plaintiff, George Nissen, applied for a patent on a tumbling device which patent was issued on March 6, 1945, being patent No. 2,370,990, and is the patent now in suit. Plaintiff, George Nissen, has assigned all his right, title and interest in that patent to plaintiff corporation. Plaintiff, George Nissen, applied for a trade-mark registration on "Nissen Trampoline" disclaiming the name "Nissen", on March 29, 1943, and this term was registered on August 7, 1943 and is the registration No. 402,868, now in suit.

### Trade-Mark

Plaintiff, in Count I of its amended complaint, charges unfair competition by defendant on the grounds that defendant wrongfully uses plaintiff's trademarks, "trampoline" (Reg. No. 402,868), "Mini-Tramp" (Reg. No. 655,474), and "Tramp" (Reg. No. 655,755).

Plaintiff charges defendant wrongfully uses plaintiff's registered trade-marks in its corporate name and in its advertising of the sale of similar equipment; plaintiff further charges that defendant makes trampolines that are similar in appearance to those of plaintiff's and in effect wrongfully palms off its trampolines as those of plaintiff's. In Count II plaintiff alleges the same wrongs enumerated in Count I, but includes a charge of infringement of plaintiff's registered trademarks set out above.

Defendant claims:

(1) That the term "trampoline" was a generic word for the type of gymnastic equipment here involved for many years before Mr. Nissen allegedly adopted and used the term, and the term cannot, therefore, of itself have any trade-mark significance.

(2) That even if "trampoline" had been a coined word and had first been adopted by plaintiffs, it has now become generic and it is now the only word by

which this equipment is generally known, and as such has fallen into the public domain, where it cannot serve as a trademark.

■ (3) That the corporate plaintiff does not own the trade-mark registration No. 402,868 because it was abandoned by its original owner, George Nissen, before it was conveyed to the plaintiff corporation. (The court will give no further attention to this charge of abandonment because the evidence does not support the same.)

(4) That George Nissen fraudulently and falsely registered trade-mark No. 402,868 on "Nissen Trampoline" and that defendant has been damaged thereby (Title 15, Sec. 1120). (Defendant's counterclaim)

Prior to 1935 the word "trampoline" was used, at least in circus and vaudeville circles, as the name of an apparatus of the same general character made by the plaintiffs and the defendants herein. John Hayes was known as a trampoline performer in the United States and Europe between 1907 and 1915; Joe E. Brown was a professional trampoline performer from 1906 until at least 1934, using that term in referring to the apparatus and performance; another trampoline performer using similar equipment and referring to it as a trampoline, commencing in the early 1920's was George Paul. The word "trampolin" and "trampoline" appeared in Webster's Dictionary in 1934 and the word trampoline was used to describe various professional acts in Billboard magazine between 1930 and 1934.

■ The evidence shows that there was a generic or descriptive use of the word "trampoline" in vaudeville and circuses prior to the entry of plaintiff into the manufacture of this equipment. Plaintiff does not seriously dispute these facts, but contends that the fact that plaintiff was practically the sole manufacturer of this product for many years, and has spent over a million dollars advertising its product, "Nissen Trampoline" and "trampolines", has caused the word "trampoline" to acquire a secondary meaning in that the word "trampoline", in the minds of the consuming public, now identifies a product produced exclusively by Nissen Trampoline Company. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Snap-On Tools Corporation v. Winkenweder & Ladd, Inc., 7 Cir., 1957, 250 F.2d 154; Coca-Cola Co. v. Koke Co., 1920, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189.

Plaintiff contends that the determination of the validity of the term as a trademark must be based on the facts as they exist at the time of trial. This rule finds support in the following statement by the court in DuPont Cellophane Co. v. Waxed Products Co., 2 Cir., 1936, 85 F.2d 75, 77, certiorari denied E. I. DuPont De Nemours & Co. v. Waxed Paper Products Co., 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443:

> "The real problem is what it meant to the buying public during the period covered by the present suit."

■ It is clear that under the law the important consideration is, what is in the mind of the consuming public when it hears the term in dispute. Does the term identify a product or a producer. In Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 118–119, 59 S.Ct. 109, 113, 83 L.Ed. 73, the Court said:

> "It is contended that the plaintiff has the exclusive right to the name 'Shredded Wheat,' because those words acquired the 'secondary meaning' of shredded wheat made at Niagara Falls by the plaintiff's predecessor. There is no basis here for applying the doctrine of secondary meaning. The evidence shows only that due to the long period in which the plaintiff or its predecessor was the only manufacturer of the product, many people have come to associate the product, and as a consequence the name by which the product is generally known, with the plaintiff's factory at Niagara Falls. But to establish a trade name in the

term 'shredded wheat' the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. This it has not done. The showing which it has made does not entitle it to the exclusive use of the term shredded wheat but merely entitled it to require that the defendant use reasonable care to inform the public of the source of its product."

One of the earlier and more famous cases on the subject of generic trademarks was Bayer Company v. United Drug Company, D.C.S.D.N.Y.1921, 272 F. 505, at pages 509, 513, in which Judge Learned Hand stated:

"The single question, as I view it, in all these cases, is merely one of fact: What do the buyers understand by the word for whose use the parties are contending? If they understand by it only the kind of goods sold, then, I take it, it makes no difference whatever what efforts the plaintiff has made to get them to understand more. He has failed, and he cannot say that, when the defendant uses the word, he is taking away customers who wanted to deal with him, however closely disguised he may be allowed to keep his identity."

"After all presumptions and procedural advantages have been weighed, the owner must show that his mark means him, else he cannot prevent others from using it. There is no invention in the word, qua word, which he can protect."

See also, DryIce Corporation of America et al. v. Louisiana Dry Ice Corp. et al., 5 Cir., 1932, 54 F.2d 882, certiorari denied 286 U.S. 558, 52 S.Ct. 640, 76 L.Ed. 1291; Dixi-Cola Laboratories, Inc. v. Coca-Cola Company, 4 Cir., 1941, 117 F. 2d 352, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505.

In the case at bar this court finds that the term "trampoline" has been generi-cally used by authors and editors throughout the years and they are still doing so. The term "trampoline" was the name of a gymnastic event of the National Collegiate Athletic Association (NCAA) and Amateur Athletic Union (AAU) from about 1947 until late 1959, and early 1960 when the name of the event was changed to "Rebound Tumbling". Plaintiff George Nissen actively promoted the generic use of the word "trampoline' during the years he had a virtual mo nopoly in the commercial manufacture of this product. When his monopoly of the manufacture of this product was threatened, he became very active in promoting the use of the word "Rebound tumbling' instead of "trampoline" and was active in urging the NCAA and AAU to change the name of their gymnastic event from trampoline to rebound tumbling.

The generic name more commonly used for the equipment of the plaintiff and other manufacturers throughout the years and at the time of trial herein is "trampoline"; the term "trampoline" is the name by which the public most commonly identifies the equipment here involved.

The court finds that the term "trampoline" is completely generic for the type of goods here involved; that the plaintiffs have no secondary meaning in the term "trampoline" and the purchasing public does not understand the term to mean the plaintiff's product or to represent the equipment of only a single manufacturer.

Plaintiff insists that, whatever may have been its original character, trampoline has acquired a secondary meaning associated with plaintiff at least in the health and physical education field, including not only schools and colleges, but also other organizations such as Turners, Y.M.C.A.'s and the AAU. Plaintiff contends that even if "trampoline" is found to be a generic term and incapable of functioning as a trade-mark associated with plaintiff, outside of the health and physical education field, the trade-mark significance of the term within that field still should be upheld under the doctrine

of Bayer Co., Inc. v. United Drug Co., D.C.S.D.N.Y.1921, 272 F. 505 and Ross-Whitney Corp. v. Smith Klein & French Lab., 9 Cir., 1953, 207 F.2d 190. However, after reviewing the evidence herein, including the testimony of several Coaches prominent in the gymnastic field, the court finds that even in the health and physical education field the term "trampoline" is significant only as a name of the device and not as the name of a producer or a particular producer's product.

■ Defendant contends that the trade-marks "Mini-Tramp", "Aqua Trampoline", and "Tramp" are also invalid because their respective registrations were obtained only because of the existence of the registered trade-mark on "Nissen Trampoline". The court agrees that "Tramp" is invalid because it is nothing more than a contraction of the term "trampoline". However, the trade-mark "Mini-Tramp" is a combination word that does have trade-mark significance and the court finds that the same is valid. Likewise, the court holds "Aqua Trampoline" is valid.

■ With respect to defendant's contention that plaintiff, George Nissen, falsely and fraudulently registered trade-mark No. 402,868, "Nissen Trampoline", the court finds that such contention is not sustained by the evidence.

In its counterclaim defendant contends that George Nissen obtained the trade-mark registration in dispute by a false and fraudulent declaration, and the defendant is therefore entitled to damages sustained in consequence thereof. Title 15 U.S.C.A. § 1120. Landstrom v. Thorpe, 8 Cir., 1951, 189 F.2d 46, 26 A.L.R.2d 1170, certiorari denied 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620; Academy Award Products, Inc. v. Bulova Watch Co., Inc., D.C.S.D.N.Y., 1955, 129 F.Supp. 780, affirmed 2 Cir., 233 F.2d 449.

George Nissen made the following sworn statement in his trade-mark application for registration of the term "Nissen Trampoline" (the surname Nissen was disclaimed apart from the mark; the distinctive character of the mark and its registerability depend on the word "Trampoline"):

"George P. Nissen, being duly sworn, deposes and says that he is the applicant named in the foregoing statement; that he believes the foregoing statement is true; that he believes himself to be the owner of the trademark sought to be registered; that no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use said trade-mark in the United States, either in the identical form or in any such near resemblance thereto as might be calculated to deceive * * * "

In substance defendant contends George Nissen's declaration was false because (1) he was not even using the mark for it was being used by the partnership of Griswold and Nissen; (2) he knew at that time that the word "trampoline" was a generic term; (3) he sought to use the registering of the trade-mark as a harassment against subsequent possible competitors.

Defendant's contentions are not established by the evidence. The evidence indicates that George Nissen claimed trade-mark rights in "trampoline" before the partnership was ever formed and continued to exert those rights while the partnership was in existence. George Nissen also owned 75% of the partnership. It is clear the trade-mark was owned, controlled and used by George Nissen.

It is reasonable to infer from all the evidence that George Nissen knew of the use of the term "trampoline" by vaudeville and circus entertainers, but it does not necessarily follow that he knew it was a generic term in the sense urged by the defendant. Likewise, the testimony of George Nissen's former partner, Larry Griswold, that Mr. Nissen acknowledged that he sought an advantage over his competitors in registering the trade-mark "Trampoline" does not in itself establish Mr. Nissen's declaration in his application for registration a false and fraud-

ulent declaration. Considering all the circumstances then existing, including the fact that George Nissen was the only commercial manufacturer of this type of portable gymnastic equipment and the only user of the term "trampoline" as the name for said commercially manufactured equipment, the court fails to find that plaintiff George Nissen made any false and fraudulent declarations in obtaining the trade-mark registration on "Nissen Trampoline".

Likewise, the court fails to find that plaintiff made any false and fraudulent declarations in obtaining the trade-mark registration on "Aqua Trampoline".

### Patent Infringement

In Count III, plaintiff Nissen Trampoline Co. charges defendant with infringing its patent No. 2,370,990 for tumbling devices. Defendant claims plaintiff's patent is invalid and furthermore that if said patent is held to be valid, defendant has not infringed the same.

The evidence offered indicates that the apparatus used by circus and vaudeville performers in their tumbling acts, from as early as 1904 until application for the patent in dispute was filed by George Nissen on June 4, 1941, was extremely cumbersome and was usually mounted on relatively permanent posts secured in position by means of a complex system of guy wires and similar equipment. Generally they were custom made for the professional entertainers. Many of them were impractical to assemble and then tear down for storage or easy transportation.

Letters patent No. 2,370,990, was issued March 6, 1945, on George Nissen's application, all right and title of which patent has been assigned to plaintiff company herein, and is the patent now in dispute. This tumbling device overcame the objectionable features of the older tumbling devices and filled a long felt need for a sturdy, yet comparatively lightweight unit which would not require elaborate permanent fixtures and which stood the shock of impact of the per-

former without damage to the unit and which could be readily folded and stored or transported. The tumbling device patented by George Nissen was the first unit of this type to be manufactured and sold in commercial quantities. During the trial herein plaintiffs limited their infringement charge to claim 2 of the patent herein. Claim 2 is quoted here as follows:

"In a tumbling device, a frame including side members, mounting brackets secured to said side members, a plurality of supporting members each comprising a U shaped member *having the cross bar portion thereof arched upwardly near its center and the side portions thereof slanting outwardly and upwardly,* the upper ends of the supporting members having axially aligned cylindrical projections, *tubular bracing members extending from substantially the center of the crossbar portions upwardly through the cylindrical projections,* the mounting brackets being disposed in pairs, with the brackets of each pair mounted transversely opposite one another and having axially aligned holes therein for receiving the outer ends of the bracing members, and bracing means for securing the supporting members in erected position relative to the frame." (Emphasis supplied.)

Plaintiff's claim that Mr. Nissen's solution to the problem of devising a frame which was of such a nature as to withstand the tremendous and repeated shocks received by the structure when in use and yet could be easily folded for storage, resided in the leg structure for the frame set forth in claim 2 above. Defendant contends that the patent is invalid because the key features of claim 2 were not George Nissen's invention and the combination of these features was not inventive but was no more than mechanical skill. Defendant, for instance, contends that that portion of claim 2 which calls for "a U shaped member having the cross bar portion thereof arched upward-

ly near its center" was one of the more important elements of claim 2, but George Nissen did not invent it. There was some testimony which indicates that the arch in the leg section was suggested to Mr. Nissen by Larry Griswold. Defendant further contends: That the mounting brackets were not invented by Nissen; that the prior art is abundant with devices having frames with folding legs (1906 Truslow, patent No. 833,987; 1914 Farrington, patent No. 1,102,027; 1917 Lowry, patent No. 1,230,736; 1918 Marsh, patent No. 1,270,249).

In considering defendant's contentions, the court starts with the presumption of validity that attaches to the grant of the patent under Title 35 U.S.C. § 282. The courts have emphasized the heaviness of the defendant's burden in overcoming this presumption. In Strong-Scott Mfg. Co., et al. v. Weller et al., 8 Cir., 1940, 112 F.2d 389, at page 394:

> "The issuance of a patent is prima facie evidence of both novelty and utility. When one attacks a patent, he must make good his attack with reasonable clearness. The burden of proof is upon him, and every reasonable doubt will be resolved against him."

This long-followed principle of patent law has been consistently applied in this circuit in G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 1941, 115 F.2d 958, 964–965; Long v. Arkansas Foundry Co., 8 Cir., 1957, 247 F.2d 366, 369, and Ezee Stone Cutter Mfg. Co. v. Southwest Industrial Products, 8 Cir., 1959, 262 F.2d 183. These cases follow the leading cases of the Supreme Court in Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983, 985–986, and Radio Corporation of America v. Radio Engineering Laboratories, Inc., 1934, 293 U.S. 1, 2, 55 S.Ct. 928, 79 L.Ed. 163, 165.

■ Commercial success of the device patented can also be used to show patentability where this is an issue in the lawsuit, as it is here. In this respect, our Court of Appeals stated in Long v. Arkansas Foundry Co., 8 Cir., 1957, 247 F.2d 366, at page 369:

> "In a case where the patentability of a claimed invention is in issue, evidence of commercial success is admissible and may be forthcoming. In a doubtful case, such evidence may turn the scale in favor of the plaintiff. See Donner v. Sheer Pharmical [Pharmacal] Corporation, supra, at page 221 of 64 F.2d [217] [17 U.S.P.Q. at 122], and cases cited."

■ Similarly the solution to a long felt want or problem also adds to the patentability of the invention. The court herein heard evidence that this type of apparatus was made and used on an individual basis from the early 1900's, yet no one had solved the long felt need of producing a unit capable of commercial and wide-spread utilization until the present invention. G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 1941, 115 F.2d 958, 964 cited with approval in Ezee Stone Cutter Mfg. Co. v. Southwest Industrial Products, 8 Cir., 1959, 262 F.2d 183.

The defendant urges that George Nissen put together nothing more than a series of elements which were old and which, for the most part, were not even original with him, and asks the court to consider the comment of Judge Sanborn in Caldwell v. Kirk Mfg. Co., 8 Cir., 1959, 269 F.2d 506, 510, certiorari denied 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185:

> "We think, however, that under more exacting standards established by the Supreme Court in the cases which are cited in Briggs and Stratton Corporation v. Clinton Machine Co., Inc., 8 Cir., 247 F.2d 397, 401, the Kirk combination of old components, in view of what was common knowledge and what was disclosed by the prior art, cannot be held to rise to the dignity of patentable invention."

■ After considering defendant's various contentions and all the evidence and circumstances, the court finds the

patent in suit being No. 2,370,990, required more than mere mechanical skill and constituted invention over the prior art, patents and publications, and is, therefore, valid.

We next take up defendant's contention that defendant does not infringe the Nissen patent. Defendant contends that several elements of claim 2 are missing in the defendant's product. For instance: (1) claim 2 calls for a "U shaped member having the cross bar portion thereof arched upwardly near its center." The evidence indicates that the corresponding cross bar in defendant's structure is not "arched upwardly near its center", but is completely straight. (2) claim 2 provides that the tubular bracing members extend from "substantially the center of the cross bar portions upwardly through the cylindrical projections." Defendant's bracing members extend upwardly from substantially the ends of the "cross bar portions." This court finds that the George Nissen patent is not infringed by defendant's structure unless a certain range of equivalents is applied to this claim 2. In this connection the defendant contends that claim 2 cannot be expanded through the doctrine of equivalents because the doctrine of file wrapper estoppel confines the claim to its specific language. An examination of the file wrapper of George Nissen's patent application indicates a broad claim 16 and a narrower claim 15 were submitted in the prosecution of said application. Both of these claims were rejected by the Patent Examiner as being unpatentable over prior patents. The application was then amended by cancelling the broad claim 16 and inserting a limitation into claim 15 to the effect that certain tubular bracing members should extend "from substantially the center of the cross bar portions upwardly through the cylindrical projections." This amended claim 15 is claim 2 of plaintiff's patent. Defendant contends that claim 2 cannot be expanded through the doctrine of equivalents because the doctrine of file wrapper estoppel confines the claim to its specific language.

In Smith v. Magic City Kennel Club, 1931, 282 U.S. 784, 51 S.Ct. 291, 294, 75 L.Ed. 707, the court said:

"Where a patentee has narrowed his claim, in order to escape rejection, he may not 'by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to disclaimer.'"

See Maulsby v. Minneapolis Casket Company, 8 Cir., 1936, 84 F.2d 107, 109; Buchanan v. Wyeth Hardware and Manufacturing Company, 8 Cir., 1931, 47 F.2d 704, 709; Raybestos-Manhattan, Inc. v. Texon, Inc., 1 Cir., 1959, 268 F.2d 839; Moon v. Cabot Shops, Inc., 9 Cir., 1959, 270 F.2d 539, certiorari denied 361 U.S. 965, 80 S.Ct. 596, 4 L.Ed.2d 546; Doran Coffee Roasting Co., Inc. v. Wyott Manufacturing Co., Inc., 10 Cir., 1959, 267 F. 2d 200; Union Carbide & Carbon Corp. v. Graver Tank & Manufacturing Co., Inc., 7 Cir., 1952, 196 F.2d 103, certiorari denied 343 U.S. 967, 72 S.Ct. 1059, 96 L. Ed. 1363.

It is the view of this court that plaintiff Nissen having narrowed his claim to escape rejection by the Patent Office is estopped to enlarge his claim by resort to the doctrine of equivalents. Therefore, claim 2 of plaintiff's patent must be narrowly construed. Under these circumstances the court finds that defendant's tumbling device does not infringe. The corresponding "cross bar" in defendant's device is not "arched upwardly near its center", but is completely straight. Further, defendant's bracing members extend upwardly from substantially the ends of the cross bar portions rather than from "substantially the center of the cross bar portions" as provided in claim 2 of plaintiff's patent.

The evidence indicates that defendant sought to construct a more rigid device, one that did not have the resilience of plaintiff's. In accomplishing this at least two of the elements of claim 2 of plaintiff's device were omitted as hereinbefore indicated. It cannot be said under these circumstances that the defendant has infringed plaintiff's patent.

## Unfair Competition

In addition to charging trade-mark infringement and patent infringement, plaintiff charges that defendant has competed unfairly with plaintiff by attempting to pass off its goods as those of the plaintiff by constructing and selling an apparatus similar in appearance to that of the plaintiff's and imitating plaintiff's advertising and promotional material. Defendant contends that it has always marked its equipment with its trade-name and that there has been no effort on its part to palm off its goods as those of the plaintiff's. Defendant further contends that any similarities between the units of plaintiff's and defendant's are purely functional features in which the plaintiff has no monopoly.

Plaintiff contends that defendant has competed unfairly with plaintiff by using plaintiff's trade-mark "Trampoline" in its corporate name and in connection with the sale of its tumbling nets and the court should so find even though the trade-mark is found to be invalid. Fry v. Layne-Western Co., 8 Cir., 1960, 282 F.2d 97, 101. However, this court fails to find that defendant by use of the word "trampoline" seeks to palm off its goods as those of the plaintiff's. In fact the evidence indicates the defendant in using the word trampoline has stressed its own name "American Trampoline Company."

A more difficult problem is plaintiff's charge that plaintiff's folding apparatus has acquired a secondary meaning in its distinctive appearance and therefore defendant has competed unfairly with plaintiff by manufacturing and selling a folding apparatus having an appearance confusingly similar to that of plaintiff's. Defendant's apparatus closely resembles plaintiff's in appearance. The supporting legs of defendant's folding apparatus are of the same number and the same angular disposition with respect to the frame as are the legs of plaintiff's folding apparatus. There are the same number of and braces and their general location is the same. Defendant's apparatus folds in three sections of approximately the same size, as does plaintiff's. Defendant's apparatus provides chains located in exactly the same positions with respect to the frame and supporting legs as plaintiff's chains. Although defendant's President, Bill Sorenson, testified he did not consciously copy plaintiff's apparatus, but sought to improve on plaintiff's device, the court finds defendant did copy a large number of the features of plaintiff's apparatus, and defendant's product was strikingly similar. The court must next determine if the defendant acted unfairly.

In J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 1941, 120 F.2d 949, 953 the court pronounced some rules that must be applied in the case at bar.

The court said at page 953–954:

"Any article, structure or design, which is unpatented, may accordingly be imitated or appropriated in its functional aspects, if no unfair competition is involved in the manner of its use. Unfair competition has its roots in unpermissible business practices or merchandising methods. In permitting unpatented functional features to be subjected to competitive commercial appropriation, the law treats a non-functional aspect of goods as constituting in effect a mere form of merchandising or a business method. The law necessarily and naturally condemns any method of merchandising which unjustifiably tends to deceive or confuse the public. And so, in competitive goods, the appropriation of a non-functional aspect will generally be regarded as an improper method of merchandising and prohibited as unfair competition, in order to prevent probable deception or confusion of the public in the market."

At page 955:

"The right to imitate or copy the the functional features of goods does not of course import the privilege of stealing the trade of the originator, through deception or confusion. Defendant could not under any cir-

cumstances sell its overalls as those of plaintiff, nor could it wittingly allow the door to be left open to probable public deception or confusion as a result of its imitation. Leschen & Sons Rope Co. v. Fuller, 8 Cir., 218 F. 786; F. W. Fitch Co. v. Camille, Inc., 8 Cir., 106 F.2d 635. It owed the duty of identifying its product in a *manner* that would reasonably distinguish it from that of plaintiff, or, in other words, of using all practical means available, to prevent confusion in the trade. Kellogg Co. v. National Biscuit Co., supra; Moline Plow Co. v. Omaha Iron Store Co., 8 Cir., 235 F. 519."

At page 956:

"Full, fair labeling will generally speaking be held to satisfy the duty of identification in the broad field of competitive functional features. Where, however, such features have acquired a special significance as an indication of the source of the good,—commonly referred to as a 'secondary meaning'—and it appears that other reasonable steps can practicably be taken to distinguish the goods in a particular case, the court obviously may require that this be done."

Applying these rules to the case at bar, the court finds that the features of plaintiff's product which were copied by defendant in its product were functional in nature and that defendant properly labeled its product. In fact, there is little if any evidence that anyone ever purchased defendant's product under the mistaken belief it was plaintiff's product. In one instance a gymnastic instructor requested a trampoline believing a Nissen apparatus would be purchased when in fact an American apparatus was delivered. Apparently the purchasing agent on the basis of specifications furnished made the purchase which listed a lesser dollar cost. There is no evidence that defendant's apparatus was ever displayed without an identifying label on the frame and on the canvas. It is the finding of the court that there is insuffi-

cient evidence of any attempt by the defendant to deceive or confuse the public or palm off its goods as those of the plaintiff, so as to warrant a recovery by plaintiff upon the allegation of unfair competition. Neither is there any showing or indication of need for injunctive relief to prevent this type of action from occurring in the future. The evidence indicates that defendant has adopted more distinctive coloring both in its product and in its advertising. Both plaintiff and defendant have become highly competitive and successful. It is to the advantage of both to maintain distinctive identifying marks.

 In its counterclaim defendant further claims that Nissen brought this complaint in bad faith for the purpose of harassing defendant and injuring its business. The court finds that plaintiff brought this action in good faith for the purpose of determining the issues hereinbefore discussed. Defendant's claim is without merit.

Many other charges and countercharges of unfair competition have been made by the parties herein. For instance, plaintiff contends defendant has competed unfairly with plaintiff by knowingly using a photograph of plaintiff's apparatus in a sales exhibition room maintained on behalf of defendant. Defendant contends plaintiff sent an employee to its plant disguised as a feature writer, who proceeded to photograph defendant's production methods. The court does not intend to review all of the numerous contentions of the parties hereto. After reviewing the entire record, the court is of the opinion that in accordance with the Memorandum hereinbefore set out, neither party has established its claims for damages.

The foregoing shall constitute the courts findings of fact and conclusions of law.

It is therefore ordered, adjudged and decreed as follows:

1. The term "trampoline" is generic and in the public domain and cannot be exclusively appropriated for trade-mark usage.

2. The trade-marks "Nissen Trampoline" and Reg. No. 402,868 thereon; and "Tramp" and Reg. No. 655,755 thereon, are invalid and are canceled.

3. The amended complaint herein should be and is hereby dismissed.

4. The defendant's counterclaim for damages herein should be and is hereby dismissed.

5. Court Costs are taxed one-half to each party.