## Augusta Pfeil, Appellee, v. Max Loeb and Alice Loeb, Appellants.

### Gen. No. 33,721.

Opinion filed January 6, 1930.

Isaac B. Lipson, for appellants; Randolph Thornton, of counsel.

No appearance for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff, as assignee and owner of a promissory note, brought suit against the defendants, makers of the note, to recover the face value of the note with interest. The defendants moved the court to strike plaintiff's statement of claim, which motion was overruled. The defendants elected to stand by their motion and refused to file an affidavit of merits. The court thereupon entered judgment in favor of plaintiff and against the defendants on the statement of claim for $1,452, and the defendants appeal.

The question for decision therefore is, whether plaintiff's statement of claim was sufficient. The substance of the statement of claim is that the defendants made the note in question payable to the "Sheboygan Loan & Trust Co., or order" and that the note was "negotiated and assigned to her (plaintiff) by the Sheboygan Loan and Trust Company for a valuable consideration, . . . and that she is the actual, equitable and *bona fide* owner thereof." A copy of the note was attached

to and made a part of the statement of claim. The note was not indorsed by the payee or any one else. There is no assignment written upon it, and the defendants contend that their motion to strike the statement of claim should have been allowed because plaintiff did not have the legal title to the note and that the law requires that a suit based upon a promissory note must be brought in the name of the party having the legal title to the note.

In support of this contention counsel for the defendants cite a number of cases, most of which were decided before our Negotiable Instruments Act of 1907 went into effect. Section 49 of the Negotiable Instruments Act of 1907 provides: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transferer vests in the transferee such title as the transferee [transferer] had therein, and the transferee acquires, in addition, the right to enforce the instrument against one who signed for the accommodation of the transferer and the right to have the indorsement of the transferer if omitted by accident or mistake. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." (Cahill's St. ch. 98, ¶ 69; Smith-Hurd's Stat. 1929).

The statement of claim alleged in effect that the note had been assigned and transferred by the payee to the plaintiff for a valuable consideration. These allegations being admitted (by the defendants by their motion to strike) the title to the note was by virtue of section 49, just quoted, vested in plaintiff because it is there expressly provided that where a note is transferred without the payee indorsing it, "the transferer vests in the transferee such title as the transferee had." This was the holding in *Farmers Bank of Downs v. Ryan*, 223 Ill. App. 491. But the defendants further contend that there was no allegation in the

statement of claim that plaintiff had complied with section 18, chapter 110 of our Practice Act, Cahill's St. ch. 110, ¶ 18. That section has to do only with non-negotiable choses in action and is therefore inapt here. Section 5 of chapter 98 of our statutes, Cahill's St. ch. 98, ¶ 3, provides, in effect, that an assignee of a negotiable instrument may sue in his own name.

A further point is made that judgment should not have been entered on plaintiff's statement of claim because plaintiff's affidavit of merits was made before a notary public of Sheboygan county, Wisconsin, and that the notary failed to certify that she was authorized and empowered under and by virtue of the laws of Wisconsin to administer oaths and that in the absence of such certification the purported affidavit is a nullity. We think this contention must be sustained under the decisions in our State. *Desnoyers Shoe Co. v. First Nat. Bank,* 188 Ill. 312; *Ferris v. Commercial Nat. Bank of Chicago,* 158 Ill. 237; *Smith v. Lyons,* 80 Ill. 600; *Trevor v. Colgate,* 181 Ill. 129.

Section 6, ch. 101, ¶ 6, Cahill's St., provides: "When any oath authorized or required by law to be made is made out of the State, it may be administered by any officer authorized by the laws of the State in which it is so administered, and if such officer have a seal, his certificate under his official seal shall be received as *prima facie* evidence without further proof of his authority to administer oaths." In the *Desnoyers Shoe Co.* case it was said (p. 318) "By the general law merchant a notary public did not have power to administer oaths. Such authority is only conferred by statute, and will not be presumed to exist, but must be proven. (*Keefer v. Mason,* 36 Ill. 406.) The supposed affidavit of J. B. Desnoyers, above set forth, sworn to in the State of Missouri, under said statute, as heretofore construed by this court, was void for the reason the notary made no certificate of his authority to administer oaths under the laws of the State of

Missouri, and there was no other evidence of such fact filed therewith. . . .

"It is insisted by appellant that the *jurat* and seal of the notary public attached to the said affidavit established *prima facie* the fact that said notary public had authority, under the laws of the State of Missouri, to administer oaths. This contention cannot be sustained. In the case of *Trevor v. Colgate,* 181 Ill. 129, on page 131, the court say: 'The position of counsel for appellees is, the certificate of the notary, under his official seal, that he has administered the oath, is made by said section 6 *prima facie* proof that the notary had authority to administer oaths. That construction cannot be accepted. The meaning of the section is, if the notary shall certify, under his official seal, that he has authority to administer oaths under the statute of the State under which he holds his commission, such certificate shall be *prima facie* evidence that he has such statutory authority.' "

Under the authorities cited we are compelled to hold that there was no affidavit to plaintiff's claim and therefore the judgment must be reversed.

The judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

McSURELY, P. J., and MATCHETT, J., concur.