**In re TINKOFF.**

**TINKOFF et al. v. GOLD et al.**

**No. 8311.**

Circuit Court of Appeals, Seventh Circuit.
Feb. 9, 1944.

Rehearing Denied May 3, 1944.

Ella Tinkoff, pro se., and Paysoff Tinkoff, of Chicago, Ill., for appellants.

Kellam Foster and Louis Cohen, both of Chicago, Ill., for appellees.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

Ella Tinkoff, the debtor, filed a petition for an arrangement under Chapter XII of the Bankruptcy Act, 11 U.S.C.A. § 801 et seq. Her petition is not in the record. However, from the indiscriminate assortment of papers and briefs that have been

732

permitted to be filed in this case, much as goods are commonly accepted by a storage warehouse, we gather that there are three pieces of real estate in which she claims to have some interest. These parcels are known as the Hamm, the Mallers, and certain unimproved properties. Proceedings were had in the Superior Court of Cook County, Illinois, foreclosing mortgages on all these properties. We are unable to ascertain any details as to the unimproved property which seems to have been of little value. But the facts as to the Hamm and Mallers properties seem to be as follows:

On June 22, 1934, a suit to foreclose the Mallers property was filed in the State court against Ella Tinkoff, the owner of the property, and her husband, Paysoff Tinkoff. January 28, 1936, a decree of foreclosure was entered. February 17, 1936, an order was entered denying the motion of the Tinkoffs to vacate and set aside the decree of sale. March 7, 1936, the court approved the master's report of sale. January 26, 1937, a petition was filed by the Tinkoffs to vacate the order approving the master's report of sale. On the same date, the petition was denied and the sale confirmed.

Prior to August 7, 1935, a foreclosure proceeding was commenced on the Hamm property. The decree of strict foreclosure was entered February 4, 1936. On September 5, 1936, the Tinkoffs filed a petition to vacate the decree of February 4, 1936. On January 26, 1937, the petititon to vacate was denied. On February 4, 1937, the Tinkoffs filed another petition to vacate the decree of February 4, 1936, but this second petition was never acted on. On May 24, 1937, the Appellate Court of Illinois denied the right of the Tinkoffs to appeal from the decree of February 4, 1936, and the order of January 26, 1937.

On November 15, 1935, Ella Tinkoff filed a voluntary petition in the bankruptcy court for relief under Section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202. The bankruptcy court dismissed her petition on January 20, 1936. We affirmed on July 16, 1936 (7 Cir., 85 F.2d 305) and on October 1, 1936, denied a petition for rehearing. The ground for dismissal was that the petition in bankruptcy was not filed in good faith.

On March 6, 1936, this Court restrained the foreclosure proceedings in the State court on the Mallers property, and on November 21, 1936, the Hamm proceedings were included. On January 12, 1937, this Court vacated all of its restraining orders.

The alleged interest in the Mallers property sought to be arranged derives from a claim by Paysoff Tinkoff that the return of service of the summons made upon him in Kansas did not exemplify that the notary public who swore the serving officer was a notary, as required by Illinois decisions.[1] We do not see how such a defect would help the debtor. Even if we assume the service on Paysoff Tinkoff was defective and not cured, that did not invalidate the service upon and proceedings against Ella Tinkoff. The service as to her being valid, whatever interest she had was subject to the jurisdiction of the court and any action taken was binding on her. This alleged defect in the service on Paysoff, if it existed, would not increase the interest of Ella Tinkoff in the property.[2] Her interest was foreclosed by the decree. From this decree she had only an equity of redemption, which has long since expired. She therefore had no interest in the Mallers property left to her by reason of defective service on her husband, if it was defective and uncured.

It is also urged that as to the Hamm property the state proceedings are still pending, because the court made no disposition of the motion filed February 4, 1937, to vacate the decree of foreclosure entered February 4, 1936. Under the Illinois practice, this motion to be effective had to be made within thirty days after the entry of the decree sought to be vacated. Smith Hurd Ill.Rev.Stat.1943, Ch. 110, § 174(7), Ch. 77, §§ 82–84; Davis v. East St. Louis & Suburban R. Co., 290 Ill.App. 540, 542, 543, 9 N.E.2d 254. The motion by the appellants was made eleven months too late. A failure to dispose of a motion filed too late cannot affect the order to which the tardy motion was directed.

Finally, it is contended by the appellants that, although the foreclosure proceedings were begun in a court of competent jurisdiction, the initiation of the bankruptcy suit rendered void all proceedings which had taken place in the State court subse-

---

[1] Pfeil v. Loeb, 255 Ill.App. 484, and cases there cited.

[2] Rodman v. Quick, 211 Ill. 546, 71 N.E.

1087; Culver v. Lincoln Sav. & Bldg. Ass'n, 271 Ill.App. 91.

quent to the filing of the petition in bankruptcy.

We cannot agree to this proposition. Section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, contains no automatic ouster of the jurisdiction of other courts, such as is provided by Section 75, sub. *o*, 11 U.S.C.A. § 203, sub. *o*, relating to farmer debtors. Section 75, sub. *o*, by its own force effects the ouster. Section 74, sub. n, merely authorizes the bankruptcy court to stay proceedings in other courts. Benitez v. Bank of Nova Scotia, 1 cir., 110 F.2d 169, 174.

No stay was entered except by this Court. Our stay was entered March 6, 1936, without notice. On March 7, 1936, before our stay order was served upon the court below, an order confirming the sale of the Mallers property was entered there. We refused to entertain any contempt proceedings for the entry of that order.

Since there was no effective stay order in force prior to our order of March 6, 1936, and since the Bankruptcy Act did not automatically stay such proceedings, we look to prior decisions to learn whether the appellants have any support for their contention that the filing of the petition in bankruptcy by its own force made void all proceedings in the State court. They rely upon Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. In that case, the State foreclosure proceedings were begun *after* the bankruptcy proceedings had been instituted and after the bankruptcy trustee had thereby acquired constructive possession of the land. In the case at bar, the bankruptcy petition *followed* the commencement of the foreclosure proceedings in the State court.

The mortgages foreclosed in the State court were not vulnerable under the Bankruptcy Act. The Sate court was in possession of the property and was foreclosing valid mortgages when the petition in bankruptcy was filed. The filing of such petition in and of itself did not oust or affect the jurisdiction of the State court to proceed to final disposition. The rule in such circumstances is stated thus in Straton v. New, 283 U.S. 318, 326, 51 S.Ct. 465, 468, 75 L.Ed. 1060:

"Following these cases the federal courts have with practical unanimity held that where a judgment which constitutes a lien on the debtor's real estate is recovered more than four months prior to the filing of the petition, the bankruptcy court is without jurisdiction to enjoin the prosecution of the creditor's action, instituted prior to the filing of a petition in bankruptcy, to bring about a judicial sale of the real estate.

"The trustee in bankruptcy may intervene in such suits to protect the interests of the estate."

The rule enunciated by Justice Miller in the old case of Eyster v. Gaff, 91 U.S. 521, 524, 23 L.Ed. 403, is applicable to the facts of our case and effectively disposes of the appellants' argument. Justice Miller said:

"It is a mistake to suppose that the Bankrupt Law avoids of its own force all judicial proceedings in the State or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition.

"The court in the case before us had acquired jurisdiction of the parties and of the subject-matter of the suit. It was competent to administer full justice, and was proceeding, according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending.

"It was the *duty* of that court to proceed to a decree as between the parties before it, until by some proper pleadings in the case it was informed of the changed relations of any of those parties to the subject-matter of the suit. Having such jurisdiction and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void. * * *"

The proceedings in the State court were valid. Ella Tinkoff is not shown to have any interest in the property for which she seeks to provide an arrangement. There was no error in dismissing her petition.

The judgment of the District Court is affirmed.