**DONALD F. DUNCAN, INC., Plaintiff-Appellee,**

v.

**ROYAL TOPS MANUFACTURING COMPANY, Inc., and Randy Brown, Defendants-Appellants.**

No. 15851.

United States Court of Appeals
Seventh Circuit.

June 1, 1967.

Rehearing Denied Sept. 8, 1967, en banc.

Stanley M. Cahn, Cummings & Wyman, Chicago, Ill., for Randy Brown.

Maxwell E. Sparrow, Mark H. Sparrow and Sparrow & Sparrow, New York City, for Royal Tops Mfg. Co.

Owen J. Ooms, Erwin F. Adams, Chicago, Ill., for amicus curiae.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Royal Tops Manufacturing Company, Inc. and Randy Brown appeal from that portion of a judgment of the district court dismissing counterclaims filed by them against Donald F. Duncan, Inc. in a trademark infringement action commenced by Duncan.[1] The principal questions are whether the district court had jurisdiction over the subject matter of the counterclaims and, if so, whether the court properly dismissed them.

This case, which began in 1961, is here for the second time. The complaint originally filed by Duncan charged Royal Tops and Brown with, among other things, infringement of Duncan's registered trademarks "Yo-Yo" and "Genuine Duncan Yo-Yo." The defendants' answer denied the allegations of Duncan's complaint and asserted counterclaims based upon section 38 of the Lanham Trademark Act, 15 U.S.C. § 1120, section 2 of the Sherman Act, 15 U.S.C. § 2, and section 4 of the Clayton Act, 15 U.S.C. § 15, charging that Duncan obtained its trademark registrations by false and fraudulent statements and that Duncan was attempting to use them illegally to obtain a monopoly.

Following a trial on the merits of the issues raised by both the complaint and the counterclaims, the district court held Duncan's trademarks valid and infringed and dismissed the defendants' counterclaims. Inadvertently, however, the dismissal of the counterclaims was not included in the court's judgment order

1. No appearance was filed in this appeal on behalf of the plaintiff Duncan. Mr. Owen J. Ooms, the attorney who represented Duncan in the principal action and on an earlier appeal, was granted leave to file a brief and participate in the oral argument as amicus curiae.

granting the relief requested by Duncan.[2] The defendants appealed from the judgment, but made no attempt to seek review of the dismissal of the counterclaims. This court reversed the judgment. Donald F. Duncan, Inc. v. Royal Tops Mfg. Co., 343 F.2d 655 (7th Cir. 1965). We held that Duncan's trademarks were invalid because the word "yo-yo" was a generic word long used in the Philippine Islands as the name of a certain toy and because the word had also become descriptive in this country by continued usage. We expressed no opinion as to the merits of the defendants' counterclaims, of course, because no issue with respect to them was before us. On May 13, 1965, our mandate issued directing the district court to undertake "such further proceedings as may not be inconsistent with the opinion of this court."

On May 28, 1965, before any action was taken by the district court in accordance with the mandate, an involuntary petition in bankruptcy was filed against Duncan in the district court. The bankruptcy case was assigned to a different district judge than the one who had heard the trademark infringement action. On June 7, 1965, the bankruptcy court granted Duncan leave to file its plan of arrangement under Chapter XI of the Bankruptcy Act and entered a general order restraining all persons from commencing or continuing any actions against the alleged bankrupt. It was specifically agreed, however, upon the oral request of the defendants Royal Tops and Brown, that the order was not to be construed as affecting the proceedings pending before the district judge in the trademark infringement action. A motion for judgment on the mandate in this case was continued generally by the district court.

Thereafter, several matters worthy of brief mention occurred in the bankruptcy proceeding. First, the defendants Royal Tops and Brown submitted proofs of claim aggregating over one million dollars (as amended). These proofs of claim were based almost entirely upon the once-dormant counterclaims (alleging violations of the antitrust and trademark infringement laws) which had been heard on the merits in the instant case. Second, Duncan's plan of arrangement was dismissed and Duncan was adjudicated a bankrupt. Next, on March 24, 1966, pursuant to a motion filed by the defendants Royal Tops and Brown, the referee in bankruptcy entered an order designating the bankruptcy court as the appropriate forum for the liquidation of the defendants' claims. The order recited that the defendants and the trustee in bankruptcy were in agreement that "in the interests of conserving the assets" of the bankrupt estate, the defendants' claims should be compromised and approved in the amount of $415,000, subject to formal application for approval by the trustee. The compromise of the defendants' claims thus proposed was approved by the referee on June 14, 1966, following notice and hearing upon the objections of creditors. The referee's approval was subject to the condition that the amount paid to the defendants upon distribution should not exceed $17,500.[3]

The extent to which the district judge in the instant case was aware of the foregoing proceedings in the bankruptcy court is unclear. Counsel for the defendants and the trustee in bankruptcy met with him on March 28, 1966. The defendants have stated in their brief that at that time they endeavored to inform the district judge of the status of the bankruptcy proceedings, including the referee's order of March 24, 1966. From the district judge's later remarks, how-

2. The statement that "defendants' counterclaims are denied and dismissed" appears in the conclusions of law entered concurrently with the judgment order. In addition, the court's conclusions stated that "defendants have failed to establish any violation of the antitrust laws by plaintiff" and that the plaintiff "in no way interfered with the business of defendants."

3. The merits of the proceedings which have occurred in the bankruptcy court with respect to the defendants' claims are not before us in this appeal.

ever, it appears that it was not until shortly before the approval of the compromise by the referee on June 14, 1966 that the district judge realized that the defendants' claims in the bankruptcy proceeding were based principally upon the counterclaims he had heard previously.

On June 10, 1966, several of the creditors in the bankruptcy proceeding, including the attorney who had represented Duncan in its trademark litigation, filed a motion requesting the district judge to "assert [his] jurisdiction" over the claims filed in bankruptcy by the defendants. The motion was opposed by the defendants and the trustee in bankruptcy, and a hearing on it was continued until June 14, 1966. Cn that day the district judge was informed that the referee had just approved the proposed compromise of the defendants' claims. Following arguments by counsel for the defendants, the trustee, and the creditors, the matter was taken under advisement.

On June 30, 1966, the district judge entered a memorandum order, findings of fact and conclusions of law, and the judgment order from this appeal is taken. The memorandum order dissolved the continuance which had been granted earlier regarding the motion for entry of judgment on the mandate of this court. It also denied the motion of the creditors requesting the district judge to assume jurisdiction over the defendants' claims in the bankruptcy proceeding. In his findings of fact and conclusions of law, in addition to stating that the Duncan trademarks "Yo-Yo" and "Genuine Duncan Yo-Yo" were void as generic (as directed by this court), the district judge held that no fraud was practiced and no false statements were made by Duncan in procuring the registration for these trademarks. The judgment order, in accordance with these determinations, declared the trademarks invalid and dismissed the defendants' counterclaims.

The defendants first contend that the district court had no jurisdiction over the subject matter of their counterclaims. They argue that the bankruptcy court "specifically assumed" exclusive jurisdiction over the subject matter of these claims and did not relinquish it, thus depriving the district court of the power to render judgment upon them. We think the defendants' argument is not well taken.

It is true that a court of bankruptcy has broad powers concerning nearly all matters affecting the assets of the bankrupt estate. It is also true, however, that a bankruptcy proceeding, merely by virtue of its maintenance, does not divest other courts of jurisdiction over lawsuits involving the bankrupt which are pending at the time the bankruptcy petition is filed. Connell v. Walker, 291 U.S. 1, 5, 54 S.Ct. 257, 78 L.Ed. 613 (1934); In re Tinkoff, 141 F.2d 731, 733 (7th Cir. 1944). Many of such actions pending when a bankruptcy proceeding is initiated are subject to stay orders issued pursuant to section 11 of the Bankruptcy Act, 11 U.S.C. § 29,[4] but some appropriate action by either the bankruptcy court or the court in which the suit is pending is required. "It is in no sense the duty of a court to grant a stay merely because it hears of the bankruptcy of a suitor." 1 Collier, Bankruptcy 1163, § 11.08 (14th ed. 1966).

---

4. 11 U.S.C. § 29(a) provides in part:

A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition by or against him, shall be stayed until an adjudication or the dismissal of the petition; if such person is adjudged bankrupt, such action may be further stayed until the question of his discharge is determined * * *.

As the language indicates, stay orders prior to an adjudication are mandatory, if requested; following adjudication, the authority to stay pending suits is permissive, "to be exercised in the sound discretion of the court." Connell v. Walker, 291 U.S. 1, 6, 54 S.Ct. 257, 259 (1934). This assumes, of course, that the stay order requested concerns a suit "founded upon a claim from which a discharge would be a release," a question we need not reach in view of our determination that no stay order was either requested or granted.

■ ■ No order restraining the continuance of the instant proceeding was requested by any of the parties in either court; nor was any such order issued. The order issued by the bankruptcy court on June 7, 1965 which purported to restrain the commencement or continuation of all suits against the bankrupt made no reference to this case. In fact, when the order was entered the defendants requested that it not be extended to this proceeding, and the defendants do not now contend that the order had any effect on this case. The defendants are apparently of the view that the referee's order of March 24, 1966 directing the manner and time for the liquidation of the defendants' claims in the bankruptcy proceeding pursuant to section 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d), and designating the bankruptcy court as the appropriate forum for such liquidation, somehow operated to stay the proceeding before the district judge. This position is untenable. The referee's order did not purport to be a stay order. It was directed to claims filed in the bankruptcy proceeding, not to the counterclaims heard in the trademark infringement litigation. It could therefore not operate to stay this proceeding, much less to divest the district court of its existing jurisdiction over the parties and the subject matter. Further, even though a referee may enter stay orders against parties to pending suits under section 11 of the Act, a referee may not issue a stay order against a court. Only a district judge sitting in bankruptcy is authorized to issue an injunction restraining another court. 11 U.S.C. § 11 (a) (15); 1 Collier, Bankruptcy 1166, § 11.08 (14th ed. 1966). The district court therefore had jurisdiction to enter judgment on the defendants' counterclaims.

We now turn to the question whether the counterclaims were properly dismissed. The defendants argue that by our reversal of the district court's judgment holding Duncan's "Yo-Yo" trademarks valid and infringed "the issues raised by [the] counterclaims were once again thrown open for consideration." [5] Accepting the proposition that the counterclaims continued as unresolved issues in the case despite the absence of any effort to pursue them by cross-appeal, the most that can be said for this argument is that the district court could only have been obliged, following the reversal by this court, to reconsider the evidence which had been presented on the counterclaims at the trial in the light of our subsequent determination that the "Yo-Yo" trademarks were invalid as generic. It is apparent from the findings and conclusions made by the district court in conjunction with its judgment of June 30, 1966 dismissing the counterclaims that this is what was done.

■ ■ The issues raised by the counterclaims had been heard on their merits; the defendants had had their day in court. Proof that Duncan obtained the registration of its trademarks by fraud was necessary for the defendants to recover on their counterclaims for violation of the antitrust laws under the doctrine of Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Proof that the registrations were secured by false or fraudulent declarations or representations to the Patent Office was also required for the defendants to be successful on their counterclaim for violation of section 38 of the Lanham Trademark Act. We have reviewed the record of the trial on the merits and hold that the district court did not err in its ultimate findings

5. The continued vitality of the counterclaims subsequent to the district judge's initial resolution of this controversy is based upon the technical argument that no formal judgment order dismissing them was entered in accordance with Rules 58 and 79 of the Federal Rules of Civil Procedure. The defendants excuse their failure to cross-appeal the district court's original ruling on the counterclaims by saying that no "judgment" existed from which an appeal could be taken pursuant to Rule 73. It is obvious that the defendants could easily have proceeded to correct the district court's oversight if they had seriously desired to test the merits of a dismissal of their counterclaims by appeal to this court.

and conclusions that no fraudulent or false statements were made and that no fraud was involved in connection with the procurement of Duncan's trademark registrations.[6] In retrospect, Duncan may have been mistaken in its statements to the Patent Office that it was entitled to the trademarks, but the evidence falls short of showing that Duncan's claims to the trademarks were knowingly made in bad faith, or that its applications were punctuated with false or fraudulent statements. Cf., Nissen Trampoline Co. v. American Trampoline Co., 193 F.Supp. 745 (S.D.Iowa 1961). The defendants' counterclaims were properly dismissed.

The judgment of the district court is affirmed.

6. Nothing in the opinion of this court on the prior appeal fairly suggests that the registration of the Duncan trademarks was procured by knowingly false statements or by fraud. The fact that prior to making application for its trademarks Duncan acknowledged the existence of doubt as to whether the term "yo-yo" would be held descriptive did not make its later application, in which attention was called to the very proceeding where the doubt had been expressed, a bad faith attempt to register a mark known to be invalid.