**ROYAL TRUCK & TRAILER, INC., Plaintiff,**

v.

**ARMADORA MARITIMA SALVADORENA, S.A., de C. V. & Uiterwyk Corporation, Defendants.**

No. 79 C 4051.

United States District Court, N. D. Illinois, Eastern Division.

March 31, 1981.

James E. Dahl, Edward T. Joyce, Stephen M. Margolin, Margolin & Brandwein, Chicago, Ill., for plaintiff.

Christopher A. Hansen, Robert E. Nord, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, John T. Rank, Baker & McKenzie, Chicago, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are the motions of plaintiff, Royal Truck & Trailer, Inc., to proceed against defendant, Uiterwyk Corporation only and for sanctions, and the motion of Uiterwyk to sever and transfer certain claims. For the reasons herein stated, plaintiff's motions to proceed and for sanctions are granted, and Uiterwyk's motion to sever and transfer is denied consistent with this opinion.

Two weeks before the due date for the filing of the final pre-trial order in this case defendant, Armadora Maritima Salvadorena, S.A. de C.V. ("Armasal") filed a reorganization petition under Chapter 11 of the Bankruptcy Act. As a result, this litigation, at least as to Armasal, has been stayed.

Plaintiff, Royal, nevertheless requests that this court grant them leave to proceed against defendant Uiterwyk, or in the alternative, to dismiss defendant Armasal and proceed solely against Uiterwyk.[1]

Plaintiff has filed a three Count complaint in this case. In Count I, Royal seeks damages against Armasal for Armasal's alleged breach of a written Lease Agreement, entered into between Royal and Armasal in March, 1978, whereby Royal agreed to lease to Armasal fifty refrigerated trailers.

---

1. Defendant Armasal does not oppose this motion.

In Count II, Royal has brought suit on a joint written guaranty to the Royal-Armasal Lease Agreement. The guarantee was entered into at Royal's request between Armasal and Uiterwyk, which was a general agent for Armasal.

In Count III, Royal has sued Armasal and Uiterwyk on a conversion theory.

Armasal and Uiterwyk have filed various affirmative defenses as to the claims asserted by Royal. Included among these defenses are defendants' claims that 1) Royal failed to mitigate its damages; 2) the Lease Agreement fails for lack of consideration; 3) Royal breached warranties; and 4) Royal gave a partial release on the guaranty.

Additionally, Uiterwyk has filed a two count counterclaim against Armasal seeking indemnification from Armasal under the guaranty and an accounting and judgment for sums advanced on behalf of Armasal by Uiterwyk pursuant to their agency agreement.

Armasal has also filed a counterclaim against Uiterwyk alleging that Uiterwyk breached both the general agency and management contracts.

Armasal, a foreign corporation, is a shipping line which operates ships to and from ports in the United States and Central America for the purpose of transporting various types of cargo.

Pursuant to a written general agency contract between Armasal and Uiterwyk dated June, 1973 and a Management Agreement between Armasal and Uiterwyk dated January 1, 1978, Uiterwyk acted as general agent for Armasal in the United States until around March 1, 1979 when Armasal terminated Uiterwyk as its general agent.[2]

After March, 1979, Smith and Johnson became Armasal's general agent in the United States and acted for Armasal for purposes of the Royal lease.

In March, 1978, Royal leased to Armasal for one year fifty used (1969) refrigerator trailers. Uiterwyk as Armasal's general agent guaranteed Armasal's obligation.

These trailers were delivered to defendants in mid-summer 1978 in New Orleans, Louisiana. Within a few months subsequent to delivery, the monthly rental payments due Royal ceased. Additionally, the trailers were not returned to Royal in Chicago at the end of the lease term as required under the agreement.

After filing this suit, Royal obtained possession of the trailers which were allegedly in a damaged condition and strewn across an unsecured dock area outside Uiterwyk's New Orleans wharf.

All parties are in agreement that Armasal's Chapter 11 filing operates to automatically stay any and all claims pending against Armasal in this case. See, 11 U.S.C. § 362(a).

Uiterwyk contends, however, and Royal disagrees that the bankruptcy petition filed by Armasal should effect a stay against Uiterwyk as well. Nothing, however, in the Bankruptcy Code would support Uiterwyk's contention. In fact, the language of the Code makes it quite clear that, in Chapter 11, the protections afforded the bankrupt are designed for the debtor-bankrupt only. See e. g. 11 U.S.C. § 362(a); House Committee on the Judiciary House Report No. 95–595, 11 U.S.C.A. p. 419, U.S. Code Cong. & Admin. News 1978, p. 5787, and Collier on Bankruptcy § 326.01[1], [2].

The Notes of the Committee on the Judiciary specifically explain that:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

See, Notes, 11 U.S.C. § 362; and *Teledyne Industries, Inc. v. Eon Corporation*, 401 F.Supp. 729, 734 (S.D.N.Y.1975).

---

**2.** Currently pending in a Louisiana District Court is an action by Uiterwyk against Armasal relating to the termination of Uiterwyk as Armasal's U.S. agent.

Under the former Bankruptcy Act, it was well settled that bankruptcy proceedings under Chapter 11 did not require termination of every suit to which the bankrupt was a party. See, *Connell v. Walker*, 291 U.S. 1, 5, 54 S.Ct. 257, 258, 78 L.Ed. 613 (1934); *Donald F. Duncan, Inc. v. Royal Tops Manufacturing Company*, 381 F.2d 879, 882 (7th Cir. 1967).

There seems to be no compelling reason for a different result to obtain under Chapter 11 of the New Bankruptcy Code and neither party has provided us with any reason for modifying this principle under the New Code.

Moreover, the interpretation that the automatic stay provisions of Chapter 11 under the New Code operate for the benefit of the bankrupt only is further supported by reference to Chapter 13 proceedings. 11 U.S.C. § 1301 et seq.

Chapter 13, unlike Chapter 11, specifically provides for the stay of an action against a codebtor. 11 U.S.C. § 1301(a) states in pertinent part:

> Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—(1) such individual became liable on or secured such debt in the ordinary course of such individuals business...

The Notes of the Committee on the Judiciary Report No. 95–595, U.S. Code Cong. & Admin. News 1978, p. 6381, explains that this section,

> ... is designed to protect a debtor operating under a Chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through his friends or relatives that may have cosigned an obligation of the debtor.

Interestingly, although not necessary to the decision in this case, a reading of § 1301(a) would appear to require the result in the instant case, if Armasal had filed or was able to file a Chapter 13 petition, that Uiterwyk's co-obligation be specifically excepted from the provision of a stay against codebtors as the debt here appears to have been incurred in the ordinary course of Uiterwyk's business.

■ In this court's opinion, Congress' decision to specifically provide for stays against co-debtors under the New Code's Chapter 13 provisions and Congress' apparent decision to not provide for similar relief under Chapter 11 lends further support to this court's conclusion that the automatic stay provisions in § 362(a) operated in favor of the bankrupt Armasal only and not in favor of a co-debtor such as Uiterwyk.

■ Consequently, in this court's opinion, something more than the mere fact that one of the parties to this lawsuit has filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against non-bankrupt parties. See, e. g. *Teledyne Industries, Inc. v. Eon Corp., supra*, 401 F.Supp. at 734.

■ Defendant, Uiterwyk, contends that a stay of the proceedings is necessary because Armasal is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. This court disagrees.

Rule 19(a) in pertinent part provides: A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Rule 19(b), however, specifically allows the court, where a person described in sub-

division (a)(1)–(2) cannot be made a party, to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

Initially, this court notes that it appears undisputed that Armasal falls within the category of persons who, under § 19(a), should be "joined if feasible." This action asserts a breach of a lease agreement by Armasal and recovery against Armasal and Uiterwyk as joint obligors of that lease agreement.

Consequently, Armasal can be said to have, in all probability, an interest in the subject matter of the action. Nevertheless, Armasal is unable to proceed with this litigation and does not object to the court proceeding in its absence.

Consequently, we are faced with the question of whether to proceed with this action in the absence of Armasal, a person who "should be joined if feasible."

In *Provident Tradesman B & T Co. v. Patterson*, 390 U.S. 102, 109–110, 88 S.Ct. 733, 737–738, 19 L.Ed.2d 936 (1968), the Supreme Court discussed the scope of Rule 19. The Court analyzed the four "interests" suggested by Rule 19(b) that must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled.

The first interest, and one which this court finds to be particularly important here, is that the plaintiff has an interest in having a forum. In the instant case, plaintiff does not necessarily have an alternative forum available to press its claims against Uiterwyk.

The second interest, and the one Uiterwyk vigorously asserts here, is Uiterwyk's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability it shares with another. There is no doubt that Uiterwyk has such an interest here.

The third interest is that of the outsider, here Armasal, whom it would be desirable to have present. Here, Armasal has no objection to the case proceeding in its absence. Under this third consideration, then, we must consider the extent to which a judgment may "as a practical matter impair or impede his [Armasal's] ability to protect" his interest in the subject matter. The fact that Armasal raises no objections to Royal's motion to proceed renders unnecessary, in this court's opinion, any inquiry on our part as to whether Armasal will be unable to protect its interests.

The fourth interest is that of the courts and the public in complete, consistent, and efficient settlement of controversies. As to this consideration the Supreme Court stated:

> We read the Rule's third criterion, whether the judgment issued in the absence of the non-joined person will be "adequate", to refer to this public stake in settling disputes by wholes, whenever possible,
> . . . .

390 U.S. at 111, 88 S.Ct. at 738.

However, as the Court in *Patterson* made clear, "the Rule now makes it explicit that a court should consider modification of a judgment as an alternative to dismissal." 390 U.S. at 111–112 and fn.10, 88 S.Ct. at 738–739 and fn.10.

The only consideration opposing proceeding with this case is that of Uiterwyk and its claim that the absence of Armasal exposes Uiterwyk to a substantial risk of incurring multiple or otherwise inconsistent obligations.

However, in the instant case, Uiterwyk as a joint obligor to the lease agreement at issue is primarily liable and, therefore, Uiterwyk could have been sued as the only defendant in this case.

Nor does this court see the possibility for inconsistent judgments in this case. Rather Uiterwyk's main contention appears to be that it should be able to pursue any action it has against Armasal, in the event Uiterwyk is found liable, in one proceeding. While such action would, perhaps, be most desirable, it is clearly not essential to a resolution of the claims plaintiff has against Uiterwyk.

Moreover, as was specifically noted in *Smith v. Mandel*, 66 F.R.D. 405, 409 (D.C.S. C.1975), a case concerning the liability of an individual who personally guaranteed a loan of his partnership which was not named as a defendant,

Insofar as defenses are concerned, defendant Mandel as guarantor may in this action avail himself of all defenses which would otherwise be available to the primary obligor, and there is no need to have that primary obligor before this Court to achieve that end.

See also, *Isdaner v. Beyer*, 53 F.R.D. 4 (E.D.Pa.1971).

Moreover, in Illinois it is clear that a guarantor may be held liable for the full amount of the obligation. In *First Granite City National Bank v. Champion*, 130 Ill. App.2d 970, 268 N.E.2d 35, 41 (5th Dist. 1970) rehearing denied (1971), the Court stated:

The defendants as guarantors are not concerned legally with steps taken to foreclose the mortgage. Plaintiff could have sued defendants for the entire balance due on the notes [guaranteed] before the foreclosure if they had seen fit to do so and the guarantors were liable to a judgment for the full amount due on said notes.

See also, *Berea College v. Killian*, 304 Ill. App. 296, 26 N.E.2d 650, 652 (1940).

Accordingly, the present case is not one where proceeding to trial without Armasal will effect Armasal's interest nor leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Therefore, it is ordered that plaintiff's motion to proceed to trial against defendant, Uiterwyk, alone be and the same is hereby granted.

We turn next to plaintiff's motion for sanctions against defendant Uiterwyk. Plaintiff has filed numerous motions to compel defendant Uiterwyk to produce the documents in question here.

Defendant, Uiterwyk, maintains that sanctions are inappropriate because plaintiff has caused some of the delay in this action and because Uiterwyk voluntarily produced 1,000 pages of documents and voluntarily produced a witness for deposition to testify about these documents.

However, plaintiffs have sought these documents since the beginning of this lawsuit, and these documents are clearly central and relevant to the primary dispute in this case.

And, while plaintiff may have caused some delay, this court notes that plaintiff has had to consistently reappear before this court in order to obtain compliance by Uiterwyk with plaintiff's discovery requests. Moreover, defendant, Uiterwyk, has repeatedly and continuously proceeded in a dilatory fashion throughout the course of this lawsuit. It frankly strains this court's imagination to hear that Uiterwyk itself had no idea these over 1,000 pages of documents, which relate directly to this lawsuit, existed. In fact, defendant, in its motion in opposition to plaintiff's motion for sanctions, offers the following excuses for its failure to produce: 1) the documents were not thought to be covered by this court's prior order because not even Uiterwyk's in-house counsel knew of them and 2) during the course of Mr. Martin's deposition he testified about "documents prepared by clerks employed by the International Longshoremen's Association upon entry and exit of trailers and containers onto or from the New Orleans wharves." Uiterwyk claims that "the existence of such documents came as a surprise to all attorneys." It is difficult for this court to believe that, after more than a year of litigation in this case, Uiterwyk's in-house and other counsel was so unfamiliar with Uiterwyk's business, one which owns wharfs in New Orleans, that these documents came as a complete surprise.

Nevertheless, even assuming defendant's contentions are true, this court finds Uiterwyk's conduct to have been generally dilatory and, consequently, awards fees and costs to Royal for the time spent in bringing and preparing this motion.

Discovery was closed four times in this case, and the documents at issue here came to Uiterwyk's attention a month after the final discovery cut-off date. While Uiterwyk produced voluntarily witnesses for depositions in order that they could testify about these documents, this was over a month after the close of discovery and about a year and a half since the commencement of this suit.

■ Accordingly, it is ordered that plaintiff's motion for sanctions against Uiterwyk be and the same is hereby granted. Plaintiff is to prepare and submit to this court a detailed statement of the time spent preparing and bringing this motion for sanctions.

This court notes that there is still pending the motion by Uiterwyk to sever and transfer Uiterwyk's cross-claims against Armasal to the District Court for the Eastern District of Louisiana where Armasal has sued Uiterwyk relating to Uiterwyk's alleged breaches of the general agency contract. Given this court's disposition of Royal's motion to proceed and the bankruptcy proceeding pending against Armasal, it would appear appropriate that these cross-claims be consolidated with the other action since they relate to Uiterwyk and Armasal only. However, given the automatic stay on proceedings against Armasal, this court doubts that it can act on Uiterwyk's motion to sever and transfer at this time. Nevertheless, if Uiterwyk intends to proceed with its claims against Armasal before the Bankruptcy Court or if it intends to seek a relief from the stay in order to proceed against Armasal, a motion before the Bankruptcy Court regarding the consolidation of these claims may be appropriate.

Accordingly, at this time, this court denies Uiterwyk's motion without prejudice to Uiterwyk's bringing it at a later time when the status of its claims against Armasal become clear.