**CLIMAX MOLYBDENUM COMPANY**

v.

**M/V SEATRAIN ANTWERP, her engines, boilers, etc. and BALTICA S.A., a foreign corporation and Seatrain Intermodal Services Corporation, t/a Seatrain Line, Inc. and John T. Clark and Son of Maryland, Inc.**

**Civ. A. No. M–81–290.**

United States District Court,
Maryland.

March 23, 1984.

David W. Skeen, James D. Skeen, and Constable, Alexander, Daneker & Skeen, Baltimore, Md., for plaintiff.

Kieron F. Quinn, Jonathan A. Chase, and Ober, Kaler, Grimes & Shriver, Baltimore, Md., for defendant Seatrain Intermodal Services Corp.

J. Paul Mullen, and Lord, Whip, Coughlan & Green, P.A., Baltimore, Md., for defendant John T. Clark and Son of Maryland, Inc.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

By order of this court dated February 3, 1982, this case was stayed as to defendant Seatrain Intermodal (Paper No. 49) in light of its filing for Chapter 11 bankruptcy in the Bankruptcy Court of the Southern District of New York. (Paper No. 46). On May 21, 1982 this court requested the parties to address the issue of whether Seatrain Intermodal was an indispensable party to the action whose absence would necessitate a stay of the entire civil action.

(Paper No. 64). Some of the parties [1] have responded to the court. (Paper No. 66½, defendant Uniflex; Paper No. 67, plaintiff Climax Molybdenum; Paper No. 69, defendant Clark). No hearing is necessary to decide the stay issue. Local Rule 6e.

A. *Procedural History*

On February 11, 1981 Climax Molybdenum Company (Climax Molybdenum) filed this action for damage to its cargo alleging that Seatrain Intermodal Services Corporation (Seatrain Intermodal) t/a Seatrain Lines, Inc.[2] (Seatrain Lines), the time-charterer; John T. Clark and Son of Maryland, Inc. (Clark), the stevedore; M/V SEATRAIN ANTWERP, the vessel; and Baltica S.A., the vessel's owner, had all breached their various contracts and warranties, and that they had negligently caused Climax Molybdenum's cargo to be damaged. (Paper No. 1). By amended complaint, Climax Molybdenum also alleged that Uniflex Container, a division of Flexivan Leasing Inc. (Uniflex), was negligent in its manufacture of the container that collapsed, thereby damaging plaintiff's cargo. (Paper No. 55).

Clark has cross-claimed against Seatrain Intermodal t/a Seatrain Lines and Baltica S.A., seeking indemnification. (Paper No. 11). Seatrain Intermodal has cross-claimed against Clark, alleging negligence and seeking indemnification. (Paper No. 22). Uniflex has cross-claimed against Seatrain Intermodal, Baltica S.A., seeking indemnification under contractual agreement and Clark alleging negligence. (Paper No. 60). Seatrain Intermodal has filed a motion for summary judgment (Paper No. 30), as well as a motion to dismiss the cross-claim of Uniflex (Paper No. 61).

B. *Factual Background*

Climax Molybdenum was the owner of 1040 pails of molybdenum oxide. It contracted with Seatrain Intermodal and arranged to ship its cargo overseas.

Seatrain Intermodal directed Climax Molybdenum to pick up a forty foot long container, in which to load the cargo, at the Dundalk Marine Terminal, Baltimore, Maryland. On October 29, 1979 Climax Molybdenum's agent, Suwak Trucking Company (not a party to this suit), picked up a container after signing a receipt and safety report. The container was transported to Climax Molybdenum's plant in Langecloth, Pennsylvania where the cargo, which was on pallets and wrapped with fiber-tape and plastic, was loaded into the container. The cargo occupied thirteen pallets and weighed 41,650 pounds. The door of the container indicated its capacity was approximately 60,000 pounds. The container was transported to Seatrain Intermodal's yard on October 31, 1979, at which time a safety inspection report was completed, and a bill of lading was issued. (Paper No. 34). On November 6, 1979, the container and its contents were turned over to the stevedores, Clark, for loading and stowing aboard M/V SEATRAIN ANTWERP.

While Clark was loading the container from the pier to M/V SEATRAIN ANTWERP, the floor of the container collapsed and a portion of the cargo spilled out onto the deck of the vessel and the pier. Of the thirteen pallets, five were allegedly damaged. Climax Molybdenum alleges damages of $24,000, the cost of 2416 pounds of lost molybdenum and handling charges for the reprocessing of the molybdenum from the damaged pallets.

C. *Legal Analysis*

*Automatic Stay*

The automatic stay provisions of 11 U.S.C. § 362 operate only for the benefit of the bankrupt party. Defendants Clark and Uniflex may not invoke the automatic stay provisions as to the cause of action merely because co-defendant Seatrain has

---

1. Service of process on the M/V SEATRAIN ANTWERP was withheld. (Paper No. 2). Baltica S.A. has not been served. (Paper No. 14).

2. By amended answer, Seatrain Intermodal denies that it is trading as Seatrain Lines. (Paper No. 28). Plaintiff and cross-plaintiffs have not addressed this issue by way of amended complaints.

filed for bankruptcy.[3] *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 127 (4th Cir.1983); *Royal Truck & Trailer v. Armadora Maritima Salvadorena, S.A. de C.V.*, 10 B.R. 488, 491 (N.D.Ill.1981).

### Discretionary Stay

▮ The decision to grant a stay in a proceeding is within the inherent power of the trial court to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). This court exercised such discretion when it stayed these proceedings as of February 3, 1982.

In deciding whether to lift the stay this court must again exercise its discretion. Two issues must be considered: (1) whether Seatrain is an indispensable party and (2) if so, what effect the length of the stay will have on this case.

In a well-reasoned opinion, the United States District Court for the Northern District of Illinois set forth the analysis for determining whether a bankrupt party is an indispensable party to an action. *Royal Truck & Trailer v. Armadora*, 10 B.R. 488 (N.D.Ill.1981). The court explained that under Federal Rule of Civil Procedure 19(a) a court must determine if joinder of the person is feasible, but under Rule 19(b), if that person "cannot be made a party [to the suit, the court must] 'determine whether in equity and good conscience the action should proceed among the parties before it. . . .' " *Id.* at 492.

Clearly, in the instant action Seatrain is a "person" feasibly joined and was in fact a party in this action. "Consequently, we are faced with the question of whether to proceed with this action in the absence of [Seatrain] a person who 'should be joined if feasible.' " *Id.*

▮ The Supreme Court in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), thoroughly analyzed the interests a court must consider in determining whether to proceed "without a party whose absence from the litigation is compelled." *Id.* Those interests are: (1) the plaintiff's interest in having a forum; (2) the defendant's desire to avoid multiple litigation or inconsistent relief or sole responsibility for a liability it shares with another; (3) the interest of the outsider whom it would have been desirable to have present; and (4) the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. 390 U.S. at 109–111, 88 S.Ct. at 737–739. In addition to those factors, this court must consider whether or not a discretionary stay is immoderate and therefore unlawful. *Landis v. North American Co.*, 299 U.S. 248, 257, 57 S.Ct. 163, 167, 81 L.Ed. 153 (1936). "The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable time limits, so far at least as they are susceptible of prevision and description. When once those limits have been reached, the fetters should fall off." *Id.*

▮ Counsel for Seatrain has informed this court by letter of March 9, 1984, copies of which were delivered to all counsel of record in this case, that a consolidated reorganization plan involving Seatrain Lines and Seatrain International is currently pending in the New York bankruptcy court. Although counsel could not forecast when the reorganization plan will be finalized, the effect of the plan, when approved, will be to discharge all debts and claims against Seatrain Lines and Seatrain International. In addition, as to Seatrain Intermodal a Chapter 7 liquidation of its virtually non-existent assets is contemplated. Thus, counsel for Seatrain postulates that, after all the bankruptcy proceedings are completed, none of the Seatrain entities would be sub-

---

**3.** Even though Seatrain Intermodal asserts that it does not trade as Seatrain Lines, it appears that Seatrain Lines is also in bankruptcy (Paper No. 30, Exhibit A) and an automatic stay as to Seatrain Lines is also in effect. Hereinafter, "Seatrain" is used interchangeably with both Seatrain Intermodal and Seatrain Lines.

ject to the jurisdiction of this court with respect to the claims asserted in this case.

From the information provided to this court by local counsel for Seatrain, this court concludes that, even if in weighing the factors set forth in *Provident Tradesmens* this court concluded that the stay should remain in effect, the stay would be immoderate. Whether such a stay is immoderate "is a function of two variables—the scope of the stay and the reasons cited for ordering it." *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir.1976). In scope, the stay in this case has been in place for over two years and there is no indication that the bankruptcy proceedings will be completed in the near future. As for the reasons for the stay, if Seatrain's counsel is correct in predicting that after the bankruptcy proceedings are completed Seatrain will not be subject to suit in this court for the claims asserted in this case, then there exists no good reason to continue the stay.

Therefore, it is this 23rd day of March, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That unless good reason is shown by the parties within fifteen (15) days of the date of this Order, the stay imposed in this case will be lifted forthwith.

2. That the Clerk shall mail a copy of this Order to counsel for the parties.